FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>JACKIE YONG LEE,<br>*Defendant-Appellant*. | No. 11-10460<br><br>D.C. No.<br>1:08-cr-00020-<br>FMTG-2<br><br>OPINION |

Appeal from the United States District Court
for the District of Guam
Frances Tydingco-Gatewood, Chief District Judge,
Presiding

Argued and Submitted
October 15, 2012—Honolulu, Hawaii

Filed August 7, 2013

Before: Stephen Reinhardt, Sidney R. Thomas,
and Richard A. Paez, Circuit Judges.

Per Curiam Opinion

# SUMMARY[*]

## Criminal Law

Vacating a sentence and remanding for resentencing, the panel held that the district court committed three significant errors in sentencing the defendant for her involvement in a large-scale methamphetamine distribution scheme in Guam.

The panel held that the district court failed to use the Guidelines as a starting point, instead determining the sentence it desired to impose and then deciding the extent of the Guidelines reduction to be afforded in order to make the sentence fit within the Guidelines.

The panel held that the district court incorrectly calculated the base offense level because it improperly held that the defendant had pled guilty to transporting methamphetamine of a certain purity.

The panel held that the district court failed to determine a revised minimum sentence under 18 U.S.C. § 3553(e), a determination it was required to make when considering substantial assistance.

The panel could not assess the defendant's claims that the district court failed to give adequate consideration to the 18 U.S.C. § 3553(a) factors, but advised the district court to give further consideration to the defendant's age and the likelihood that she will die in prison.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Mark Eibert, Half Moon Bay, California, for Defendant-Appellant.

Karon V. Johnson, Assistant United States Attorney, Hagåtña, Guam, for Plaintiff-Appellee.

## OPINION

PER CURIAM:

The district court committed three significant errors at Jackie Yong Lee's sentencing. First, the court failed to use the Guidelines as a starting point. Instead, it determined the sentence it desired to impose and then decided the extent of the Guidelines reduction to be afforded, in order to make the sentence fit within the Guidelines. This was the converse procedure to that which it was required to follow. Second, it incorrectly calculated the Guidelines range when it held that Lee pled guilty to transporting methamphetamine that was 80 percent pure. Third, it failed to determine a revised minimum sentence under 18 U.S.C. § 3553(e), a determination that it was required to make in this case. For these reasons, we vacate and remand for resentencing. We also address Lee's other arguments on appeal, because the issues are likely to arise again at resentencing.

## I.

The details of Jackie Yong Lee's crime and her involvement in the Ichihara drug network are neither relevant to this appeal nor clear from the record before us. We

therefore set forth only a brief summary of Lee's criminal conduct. Richard Ichihara was in charge of a large-scale methamphetamine distribution scheme in Guam, for which he was ultimately sentenced to 30 years in prison. Lee was indicted for her involvement in Ichihara's drug network.

Ichihara and many others were indicted on ten counts or less of violating various federal drug laws because of their involvement in the drug network. Lee was indicted on three counts. Count II charged Lee and others with conspiracy to distribute "more than 50 grams of net weight of methamphetamine hydrochloride (ice)," in violation of 21 U.S.C. § 841(a)(1) and § 846. Count III charged Lee and others with conspiracy to distribute "more than 3,000 grams of methamphetamine hydrochloride (ice), its salts, isomers, and salts of its isomers and more than 30,000 grams of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers," in violation of 21 U.S.C. § 841(a)(1) and § 846. Count X charged Lee and others with a forfeiture count under 21 U.S.C. § 853.

Shortly after the indictment was brought, Lee agreed to cooperate and plead guilty to Count III and Count X in return for the government's dropping the charges under Count II and promising to move for a "substantial assistance" reduction at her sentencing. The plea agreement contains the following factual stipulation:

> Between 2004 and 2007, [Lee] supplied Richard John Ichihara with over three kilograms of methamphetamine hydrochloride (ice) which she knew Ichihara was distributing.

The district court accepted Lee's guilty plea on Count III and Count X and appears to have relied on the factual stipulation in her plea agreement.

Over the next three years, Lee provided substantial assistance in the government's investigation and prosecution of the Ichihara drug network. Although the details of Lee's assistance are sealed, the public record supports the conclusion that her assistance was significant. At Lee's sentencing hearing, the government stated that the reasons for her substantial assistance were "detailed" and that she "helped [the government] substantially." Additionally, defense counsel described Lee's assistance as "extremely substantial," a statement that was not contested by the government. Also illustrative is the district court docket sheet, which reflects that her sentencing hearing was delayed for three years. Most of the continuances were due to her ongoing role in assisting the government.

At sentencing, Lee and the government disputed whether Lee's base offense level should be 38 or 34. The government argued that by stipulating in her plea agreement that she had distributed more than three kilograms of "methamphetamine hydrochloride (ice)," Lee had admitted transporting more than 1.5 kilograms of "ice" as defined in the Sentencing Guidelines— that is, "a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity." U.S.S.G. § 2D1.1(c) n.(C). Lee argued that she had not admitted transporting methamphetamine of an eighty percent purity level and that she understood "ice" to be the street name for methamphetamine generally. She relied heavily on the fact that all three of the drug tests described in the PSR—which represented the entire factual record before the district court—reported that the methamphetamine was

below 80% purity. The district court, however, rejected her argument. It stated that "ice" was a "term of art which means a methamphetamine purity of 80 percent or more." The district court further stated that its conclusion was not undermined by the three drug tests because "only a small fraction of the total drugs" were tested. Thus, the district court concluded, Lee's proper base offense level was 38.

At this point in the sentencing hearing, the probation officer re-calculated Lee's Guidelines range. He began at a base offense level of 38 and applied the 3-level reduction for acceptance of responsibility, which yielded a total offense level of 35. Lee's new sentencing range was 188–235 months, with a mandatory minimum of 120 months. The district court then asked for the probation officer's recommendation, to which the officer responded 120 months. The district court inquired, "So the mandatory minimum of ten years?" The probation officer responded, "Yes."

The district court then turned to the "substantial assistance" reduction. The government began its argument by officially "mov[ing] for a substantial assistance departure —from both the guidelines and the mandatory minimum sentence." The government noted that the reasons for Lee's substantial assistance were "detailed." However, it "had to weigh a balance against the substantial assistance, her role in the organization and her prior conviction." "[B]alancing the two, the seriousness of her offense against her cooperation when she finally get caught," the government believed that "a 96-month sentence is appropriate."

The district court questioned the government's recommended sentence of 96 months. It first noted the potential disparity with Lee's co-defendants, specifically

Ichihara who was given a 30-year sentence. The government responded that Ichihara was a far more serious criminal. The district court then noted another co-defendant who was "not as culpable" as Lee but was sentenced to 97 months. The government distinguished this co-defendant on the ground that Lee "helped us substantially." The government also noted Lee's age, which was 72 years at the time of sentencing. The government concluded: "So we think that, in effect, this is a life sentence, which, given what she's done, is appropriate." The district court responded: "Okay."

The district court proceeded to rule on the government's motion to depart "from the guideline level as [] provided by the United States sentencing guidelines Section 5K1.1 on the basis that the defendant has rendered substantial assistance to the prosecutor in its investigation of drug trafficking on Guam and elsewhere." It granted the 10-level departure, as requested by the government. The district court then (incorrectly) calculated that, after applying the 10-level departure, Lee's total offense level under the Sentencing Guidelines was 28. It further stated (also incorrectly) that her Guidelines range was therefore 78–97 months.[1]

Defense counsel then argued that Lee should be sentenced at the low end of this range. Specifically, counsel mentioned the extensiveness of Lee's assistance to the government, her advanced age, her caretaking duties for her disabled 80-year-old partner who was nearing death, and her genuine

---

[1] These errors were corrected later in the proceeding.

contrition.[2] Regarding Lee's age, defense counsel stated that "eight years is probably a life sentence" and that he did not believe a life sentence was the "intention" of the guidelines. Defense counsel concluded, "at that age, her ability to do much of anything that would be in violation of the law, I think, is going to be unlikely due to what would be her physical condition at that time."

As the district court prepared to impose a final sentence, the probation officer interrupted to explain that the court had calculated the Guidelines range incorrectly. Because the district court had not applied a 3-level enhancement included in the PSR's calculations, Lee's total offense level was 35 before applying the "substantial assistance" departure. The government had requested a 10-level departure in its filings (based on its initial belief that Lee's total offense level was 38). Because the district court had granted the 10-level departure, Lee's total offense level was 25. With a criminal history category of II, Lee's range under the Guidelines was 63–78 months, and imposing a 96-month sentence would therefore be an above-Guidelines sentence.

The district court asked the government to clarify its request for the "substantial assistance" departure under U.S.S.G. § 5K1.1. The government stated that it believed "96 months was appropriate, whatever level one has to depart to, to get to that." The district court then asked, "[s]o . . . you're actually asking for a departure to the level of [] 28[?]" The

---

[2] At multiple points during the sentencing hearing, the transcript either states or suggests that Lee was crying. On one instance, the district court asked for someone to provide her with some water. Lee's principal statement to the district court was to repeat that she was "[S]orry. Very sorry."

government responded affirmatively, and the district court noted that this meant that the government was "changing [its] request." The government agreed and stated that it was now seeking a 7-level departure because it "fe[lt] strongly about the 96 months."

The district court then granted the government's motion for a 7-level departure under § 5K1.1. Lee's total offense level was therefore calculated at 28. The district court stated that Lee's final sentencing range under the Guidelines was 87–108 months, and it imposed a 96-month sentence. When the district court finally asked if Lee understood her 96 month sentence, she stated, "my heart condition is not so good, so I don't know I can get out or I die there."

## II.

### A.[3]

Although a district court has discretion, post-*United States v. Booker*, 543 U.S. 220 (2005), and under the 18 U.S.C. § 3553(a) factors, to impose a sentence it prefers even if that sentence is outside of the Guidelines range (so long as it is not lower than a statutory or revised statutory minimum sentence), it may not manipulate the calculations under the Sentencing Guidelines in order to produce a

---

[3] The error that is the subject of Part II.A, although not clearly raised in either party's briefs, is closely intertwined with their arguments. We address this error, even though it was not clearly briefed, because it is both "antecedent to . . . and ultimately dispositive of" the appeal before us. *Arcadia v. Ohio Power Co.*, 498 U.S. 73, 77 (1990); *see also U.S. Nat'l Bank of Oregon v. Ind. Ins. Agents of Am., Inc.*, 508 U.S. 439, 447 (1993) (stating that courts may rule on an antecedent issue even if "the parties fail to identify and brief" it).

Guidelines range that will allow it to impose the sentence it prefers. As the Supreme Court has repeatedly held, the Sentencing Guidelines are the "starting point" for a district court's sentencing analysis. *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011); *Kimbrough v. United States*, 552 U.S. 85, 108 (2007); *Gall v. United States*, 552 U.S. 38, 49 (2007). Here, however, the district court did not use the Guidelines as a starting point. Rather, at the government's request, the court agreed to impose a sentence of 96 months and then selected a departure level for Lee's substantial assistance under U.S.S.G. § 5K1.1 that would enable it to hold that the desired sentence was within the Guidelines range.[4] The record could not be clearer on this point: the

---

[4] U.S.S.G. § 5K1.1 provides: "Substantial Assistance to Authorities (Policy Statement): Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

> (a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:
>
> (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>
> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
> (3) the nature and extent of the defendant's assistance;

district court had initially granted a 10-level departure under U.S.S.G. § 5K1.1 and was ready to impose a 96-month sentence from a Guidelines range of 87–108 months when the probation officer interrupted to explain that, under the proper calculation of the Guidelines, a 10-level departure would result in a range of 63–78 months. The district court—instead of accepting that lower range and exercising its discretion to impose an above-Guidelines sentence—reduced the substantial assistance departure to a 7-level departure. It was thus able to create an artificial Guidelines range of 87–108 months and select a 96-month sentence within that range.

A district court may not create a Guidelines range on a basis that it is necessary to enable the court to impose the sentence it would like to impose. A district court may, however, calculate a proper Guidelines range and then choose a sentence outside that range by granting a variance.[5] This is

---

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance."

[5] The Guidelines analysis currently consists of a three-step process. The district court must (1) calculate the Guidelines range, (2) consider any applicable "departures" under Parts H and K of Chapter 5 of the Sentencing Guidelines, and (3) consider the factors in 18 U.S.C. § 3553(a). *See* U.S.S.G. § 1B1.1 (2010). It may then impose the sentence it chooses. "If, after step ([3]), the court imposes a sentence that is outside the guidelines framework, such a sentence is considered a 'variance.'" U.S.S.G. § 1B1.1 background (2010) (citing *Irizarry v. United States*, 553 U.S. 708 (2008)). Although it might appear odd to refer to choosing a sentence outside the Guidelines range as "under the Guidelines," such is the effect of the Sentencing Commission's making the consideration of a "variance" the third step of the Guidelines procedure. *See, e.g.*, *United States v. Jackson*, 467 F.3d 834, 840 (3d Cir. 2006) (referring to the third

not what happened here. Because the district court employed precisely the converse procedure to that which it was required to follow, it clearly erred.[6]

## B.

The district court committed a second error of significance by incorrectly calculating the base offense level. Under the Sentencing Guidelines, an individual convicted under 28 U.S.C. § 841 is generally sentenced based on the Drug Quantity Table in U.S.S.G. § 2D1.1(c). For methamphetamine, the Table specifies a base offense level of 38 if the drug quantity is as follows:

> 15 KG or more of Methamphetamine, or 1.5 KG or more of Methamphetamine (actual), or 1.5 KG or more of "Ice."

The base offense level is 34 if the drug quantity is as follows:

> At least 1.5 KG but less than 5 KG of Methamphetamine, or at least 150 G but less

---

step of this three-step process as the consideration of "Guidelines variances").

[6] We recognize that, post-*Booker*, this court no longer reviews a district court's application of a guidelines departure for procedural error. *See United States v. Mohamed*, 459 F.3d 979, 987 (9th Cir. 2006); *United States v. Vasquez-Cruz*, 692 F.3d 1001, 1007–08 (9th Cir. 2012). Our concern here is not that the district court procedurally erred in its application of a single departure, but rather that the record demonstrates that the district court did not use the guidelines range as a starting point whatsoever. Instead, the court chose a desired sentence, the one recommended by the government, and worked backward to create a guidelines range that encompassed that sentence.

> than 500 G of Methamphetamine (actual), or
> at least 150 G but less than 500 G of "Ice."

U.S.S.G. § 2D1.1(c). Some additional definitions are necessary to apply these provisions. The quantities relating to "Methamphetamine" (as opposed to "Methamphetamine (actual)" or "Ice") are based on the "entire weight of any mixture or substance containing a detectable amount of the controlled substance." § 2D1.1(c) n.(A). The quantities relating to "Metamphetamine (actual)" are based on the weight of actual methamphetamine—i.e., the total weight of the mixture, multiplied by the average purity. § 2D1.1(c) n.(B). The quantities relating to "Ice" are based on the total weight of the mixture, *if* the methamphetamine is of at least 80% average purity. § 2D1.1(c) n.(C).[7]

Lee was sentenced under the 38-level provision. The district court looked to Lee's factual stipulation in her plea agreement, which reads as follows:

> Between 2004 and 2007, [Lee] supplied Richard John Ichihara with over three kilograms of methamphetamine hydrochloride (ice) which she knew Ichihara was distributing.

The district court held that the reference to "methamphetamine hydrochloride (ice)" compelled the

---

[7] For example, a 10 KG mixture of methamphetamine of 80% purity would be 10 KG of Methamphetamine, 8 KG of Methamphetamine (actual), and 10 KG of Ice. A 10 KG mixture of methamphetamine of 70% purity would be 10 KG of Methamphetamine, 7 KG of Methamphetamine (actual), and 0 KG of Ice.

conclusion that Lee admitted to transporting "Ice," as defined by the Sentencing Guidelines. Under that interpretation, because the quantity specified in the plea agreement was 3 KG, Lee would fall into the 38-level provision in U.S.S.G. § 2D1.1(c).

Lee challenges this determination. She argues that she understood the word "ice" to be a reference to methamphetamine generally. She points to the only three tests run on the seized drugs, which showed the purity to be 33%, 57%, and "less than 80%" respectively. Under Lee's interpretation, since the term "ice" was, in her case, a reference to methamphetamine generally, the factual stipulation was only to having transported 3 KG of a mixture of methamphetamine. Thus, Lee would fall into the 34-level provision in U.S.S.G. § 2D1.1(c).[8]

This is a dispute over how to interpret Lee's plea agreement,[9] and we hold in favor of Lee. Plea agreements are analyzed under contract law principles. *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993). "In construing an agreement, the court must determine what the defendant reasonably understood to be the terms of the agreement when he pleaded guilty." *Id.* Additionally, any ambiguity is read

---

[8] In the alternative, she argues that, even if the purity issue was stipulated to in the plea agreement, because the district court was not bound by her stipulation and because she disputed purity, the district court should have resolved the issue under Federal Rule of Criminal Procedure 32(i)(3)(B). We do not reach this issue.

[9] Contrary to the government's suggestion, Lee's argument is not (and has not ever been) that her guilty plea was not knowingly or intelligently made. She disputes the interpretation of her plea agreement, not the circumstances under which she pled guilty.

against the government. *Id.* at 1338. Lee contends that she understood the terms of her plea agreement to be a factual stipulation to having transported 3 KG of a methamphetamine mixture, not 3 KG of methamphetamine of 80% purity. Her contention is strongly supported by the factual record. The record indicates that all members of Ichihara's drug trafficking scheme referred to the methamphetamine, regardless of its purity, as "ice." Furthermore, as Lee notes, the only methamphetamine samples tested in this case were all below 80% purity. Although the district court is certainly correct that not all drugs were tested, this does not undermine our conclusion that the record strongly supports Lee's contention that, at the time of her plea, she understood her factual admission to be that of transporting methamphetamine generally, not methamphetamine of 80% purity. Finally, even if the record were ambiguous, we would read any ambiguity against the government and in favor of Lee. *Id.*

The government's response is to suggest that the word "ice" is unambiguous because the Sentencing Guidelines define "ice" as methamphetamine above 80% purity. Although we agree that the Sentencing Guidelines are one source of authority in interpreting what a defendant might have understood a plea agreement to mean, the government cites no precedent to support the conclusion that the Guidelines are the *exclusive* authority. Nor do we agree that such a rule would be appropriate.[10]

---

[10] The government also argues that Lee's guilty plea necessarily admitted the drug purity allegation in the indictment. We rejected an analogous argument relating to a drug quantity allegation in the indictment in *United States v. Thomas*, 355 F.3d 1191, 1196 (9th Cir. 2004). Because purity is merely the ratio of two quantity measures, the government's argument is foreclosed by *Thomas*.

We conclude that, at the time of making her plea agreement, Lee factually stipulated only to having transported 3 KG of methamphetamine and that she did not admit to any purity level. Consequently, applying the 38-level provision in sentencing Lee constituted procedural error.

In sum, the district court committed two errors in calculating the Guidelines range. First, the district court failed to use the Guidelines as a "starting point" for its analysis. Instead, it selected the sentence first and then placed Lee in the Guidelines range that would allow the sentence. Second, it incorrectly calculated the base offense level because it improperly held that Lee had pled guilty to transporting methamphetamine of a certain purity level. Accordingly, we vacate and remand for resentencing.

## III.

Lee also argues that the district court's imposition of a 96-month sentence under the Guidelines was substantively unreasonable under the 18 U.S.C. § 3553(a) factors. However, we cannot review this claim because the district court failed to calculate a revised minimum sentence under 18 U.S.C. § 3553(e), a determination that it was required to make in order to ensure that the sentence would not be lower than the revised statutory minimum.

## A.

Prior to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), there were two important constraints on a district court's sentencing authority. First, the district court was limited in its sentencing by any applicable mandatory minimum sentence set forth in the statute that the

defendant violated, subject to limited exceptions. Second, the district court was required to impose a sentence within the range prescribed by the Sentencing Guidelines. *Booker* rendered the Sentencing Guidelines advisory, thus eliminating to a large degree the second constraint on district court sentencing. However, the first constraint remains, and a district court is still required to impose a sentence no lower than the mandatory minimum sentence, even if it would prefer to impose a lower sentence under the now-advisory Sentencing Guidelines. *See* U.S.S.G. 5G1.1. In short, the statutory minimum takes precedence over whatever the result under the Guidelines or otherwise might be.

But when a defendant has provided substantial assistance to the government, the district court may calculate a revised mandatory minimum under 18 U.S.C. § 3553(e),[11] considering only factors related to the defendant's assistance. *United States v. Wimpf*, 620 F.3d 1168, 1171 (9th Cir. 2010); *United States v. Auld*, 321 F.3d 861, 867 (9th Cir. 2003). The revised mandatory minimum constitutes the new floor for the defendant's sentence.

In this case, the district court erred by not determining that the sentence it had chosen—its "preferred sentence"—was not lower than the revised statutory minimum sentence. The pre-departure statutory minimum sentence was 120

---

[11] Section 3553(e) provides: "Limited authority to impose a sentence below a statutory minimum. Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code."

months. The district court selected a preferred sentence of 96 months. Because 96 months is less than the statutory minimum sentence of 120 months, the district court could sentence Lee to 96 months only if it revised the statutory minimum sentence so that it was not greater than 96 months. In order to revise the statutory minimum sentence, the district court needed to consider the "substantial assistance" reduction provided for by 18 U.S.C. § 3553(e). Although the reduction in this case should clearly be very substantial, it is clear from the record that the district court did not make the necessary determination as to what it would be. When considering the "substantial assistance" issue, the district court never mentioned the words "mandatory minimum," even though it had recognized earlier that Lee was subject to a mandatory minimum sentence that it was necessary to revise downward substantially. Additionally, in granting the government's motion for a "substantial assistance" reduction, the district court explicitly cited "Section 5K1.1" but did not mention 18 U.S.C. § 3553(e). Finally, its close attention to the correct number of "levels" to which to depart is consistent with applying the "substantial assistance" provision under the Sentencing Guidelines but not with reducing the statutory minimum sentence under 18 U.S.C. § 3553(e). Thus, the totality of the district court's statements at sentencing is consistent with its failure to determine a revised minimum sentence in accordance with 18 U.S.C. § 3553(e). As a result, it is impossible to know whether the sentence that the district court imposed —96 months —was lower or higher than the revised statutory minimum, which the court was required, but failed, to establish.[12]

---

[12] Lee's assistance was "extremely substantial" and occurred over the course of three years. Indeed, the government believed that Lee's assistance merited at least a 7-level departure under the Guidelines, which

## B.

Because of this error, we cannot assess Lee's claim that the district court failed to give adequate consideration to the § 3553(a) factors. However, we address Lee's arguments because the district court is likely to confront them again on remand. *See United States v. Sayetsitty*, 107 F.3d 1405, 1411 (9th Cir. 1997); *United States v. Doe*, 705 F.3d 1134, 1139–40 (9th Cir. 2013).

Lee presents many arguments for why a 96-month sentence is substantively unreasonable in her circumstances: her extensive assistance to the government, her advanced age (72 years old at the time of sentencing), her contrition, and her sole caretaker role for her dying partner. Because we cannot determine what length sentence the district court might impose on remand, we will not consider whether, if it were to impose the same sentence that it imposed at the initial sentencing, such a sentence would be substantively unreasonable. However, we agree that the district court did not give sufficient weight to the facts on which it and the prosecution agreed: that for a 72-year old woman, a 96-month sentence is likely to be the equivalent of a life sentence and thus a verdict that Lee will die in prison.[13] "There is a worthy tradition that death in prison is not to be ordered lightly, and the probability that a convict will not live out his sentence

---

corresponds to an approximately fifty percent reduction in her sentencing range. The reduction in the mandatory minimum sentence may well also be extremely substantial given the nature of her assistance.

[13] We do not know what other facts led the court and the prosecutor to agree on this conclusion. However, we assume that there was valid reason for it.

should certainly give pause to a sentencing court." *United States v. Wurzinger*, 467 F.3d 649, 652 (7th Cir. 2006). Here, however, the district court did not pause in sentencing Lee to a likely sentence of death in prison. The government specifically advised the district court that it believed a 96-month sentence was appropriate because Lee would likely die in prison. To this, the district court responded: "Okay." During resentencing, the district court, in exercising its discretion, should give more serious consideration to whether to impose a sentence that effectively condemns a 72-year-old woman who provided extensive assistance to the government to death in prison for an offense of the nature involved.[14]

## CONCLUSION

The district court committed three errors in sentencing Lee. First, it did not use the Guidelines as a "starting point." Instead, it determined its preferred sentence and then adjusted the Guideline range such that its preferred sentence fell within that range. Second, it incorrectly held that Lee pled guilty to transporting methamphetamine that was 80 percent pure. Third, it did not calculate the revised statutory mandatory minimum sentence and, thus, we cannot determine the legality or appropriateness of Lee's sentence. Therefore we vacate her sentence and remand for resentencing. We also

---

[14] We note that although the district court may use the § 3553(a) factors as a basis for departing from the new Guidelines sentence that it calculates, the court may not use the § 3553(a) factors as a basis for departing from the new mandatory minimum sentence that it calculates. *See United States v. Jackson*, 577 F.3d 1032, 1036 (9th Cir. 2009).

advise the district court to recompute the base offense level upon remand and to give further consideration at resentencing to Lee's age and the likelihood that she will die in prison.

**VACATED and REMANDED for RESENTENCING.**