**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 15-50353 |
| Plaintiff-Appellee, | D.C. No. 2:14-cr-00209-TJH-1 |
| v. | |
| ISMAEL GUTIERREZ VILAVAZO, AKA Ismael Gutierrez, AKA Mike Gutierrez, AKA Mikey, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, District Judge, Presiding

Argued and Submitted November 8, 2016
Pasadena, California

Before: BERZON, CHRISTEN, and NGUYEN, Circuit Judges.

Ismael Gutierrez Vilavazo appeals his conviction and sentence for

conspiracy to distribute methamphetamine, 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii),

846, aiding and abetting methamphetamine distribution, 18 U.S.C. § 2(a), and five

counts of knowingly and intentionally using a communications facility to commit a

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

felony, 21 U.S.C. § 843(b).  We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and we affirm.

**1.**  Gutierrez contends that the district court erred by admitting Jorge Huerta's recorded statements because there was insufficient evidence that Huerta was a co-conspirator.  The government must prove to the district court by a preponderance of the evidence "that there was a conspiracy involving the declarant and the [defendant], and that the statement was made 'during the course and in furtherance of the conspiracy.'"  *Bourjaily v. United States*, 483 U.S. 171, 175 (1987) (quoting Fed. R. Evid. 801(d)(2)(E)).  In making these preliminary factual findings, the court may consider all but privileged evidence, including the hearsay statements themselves, regardless of admissibility.  *Id.* at 178, 181.  Due to its presumptive unreliability, "a co-conspirator's statement implicating the defendant in the alleged conspiracy must be corroborated by fairly incriminating evidence."  *United States v. Silverman*, 861 F.2d 571, 578 (9th Cir. 1988).

The district court did not err by admitting Huerta's out-of-court statements without first making the *Bourjaily* findings.  "A district court has the discretion to vary the order of proof" by "admitt[ing] the statement[s] . . . prior to the presentation of independent evidence of the existence of the conspiracy."  *United*

2

*States v. Loya*, 807 F.2d 1483, 1490 (9th Cir. 1987). Here, the district court noted its discretion to delay ruling on the admissibility of Huerta's statements and invited Gutierrez to challenge them later, stating that they came in "subject to a motion to strike." As Gutierrez never moved to strike the statements, we review their admission for plain error. *See United States v. Bridgeforth*, 441 F.3d 864, 869 (9th Cir. 2006).

There was ample independent evidence that Gutierrez and Huerta conspired to sell methamphetamine. To begin with, Gutierrez was actively involved in setting the terms of the sale. Gutierrez told the informant that he had around two pounds of methamphetamine but it was not "readily available" because he was concerned that the police were investigating him. Gutierrez told the informant that he would "get [him] in touch with one of his contacts or workers." Gutierrez instructed the informant to go alone to the meeting because Huerta "didn't want anybody else there."

Gutierrez and the informant discussed a price of $450 per ounce. When Huerta quoted the informant a price of "[$]600," the informant asked Gutierrez to "tell [Huerta] to . . . bring it down a bit, because . . . [they] had agreed it would be less." These exchanges corroborate Huerta's later statement agreeing to honor the

3

price quoted by Gutierrez, in which he told the informant, "if you talked to [Gutierrez] about it, I can leave it at about that price, [$]450."

Other independent evidence also shows Gutierrez's role in the conspiracy as an intermediary between the informant and Huerta. The informant initially asked Gutierrez whether he could acquire the methamphetamine on credit or if he would have to pay cash. Six days later, Gutierrez told the informant, "[Huerta] wants you to pay him everything," which the informant understood to mean, "he's not going to give me any credit on the drugs."

Phone records further corroborate the existence of the conspiracy. Gutierrez and Huerta spoke for two minutes immediately before Huerta first called the informant to discuss the transaction. The next day, the informant called Gutierrez to tell him that he had enough money for two ounces. Gutierrez informed him, "I'll tell [Huerta] . . . right now to call you." Gutierrez then immediately made several calls to Huerta and Huerta's mother-in-law. The number and timing of these calls suggest that they were attempts to convey the informant's readiness to purchase methamphetamine rather than innocuous communications with family members. *See United States v. Boykin*, 785 F.3d 1352, 1359-60 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 272 (2015).

4

Finally, when the informant expressed doubt about dealing solely with Huerta, Gutierrez sought to reassure him, stating, "[T]hey're my people." Later, the informant again asked, "[A]re you going to be there, because . . . I don't know [Huerta], and . . . the thing is to do the deal with you . . . and with him too, at the same time." Gutierrez responded, "[I]t's the same thing, he's my nephew." Gutierrez's statements corroborate Huerta's later statements to the informant that he (Huerta) and Gutierrez "are the same" and "are all one hand."

Because there was substantial independent evidence that corroborated Huerta's out-of-court statements implicating Gutierrez in the conspiracy, the court did not abuse its discretion in admitting Huerta's statements, let alone commit plain error.

**2.** Gutierrez argues that there was insufficient evidence to support both the conspiracy and the aiding and abetting counts. In reviewing this claim, the "critical inquiry" is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).

"In order to prove a conspiracy under 21 U.S.C. § 846, the prosecution must prove that: (1) there was an agreement to accomplish an objective made criminal by § 841(a)(1), which prohibits the knowing or intentional distribution of or possession with intent to distribute a controlled substance; and (2) the defendant intended to commit the underlying offense." *United States v. Suarez*, 682 F.3d 1214, 1219 (9th Cir. 2012). There was sufficient evidence, discussed above, that Gutierrez and Huerta entered into an agreement. The government did not need to prove that anyone committed a crime. "[P]roof of an overt act in furtherance of the conspiracy is not required in order to prove a violation of [21 U.S.C.] § 846; proof of an agreement alone is sufficient." *Id.* (citing *United States v. Shabani*, 513 U.S. 10, 15-16 (1994)).

The elements of aiding and abetting are "(1) that the accused had the specific intent to facilitate the commission of a crime by another, (2) that the accused had the requisite intent of the underlying substantive offense, (3) that the accused assisted or participated in the commission of the underlying substantive offense, and (4) that someone committed the underlying substantive offense." *United States v. Shorty*, 741 F.3d 961, 970 (9th Cir. 2013) (quoting *United States v. Singh*, 532 F.3d 1053, 1057-58 (9th Cir. 2008)). Here, the evidence "was enough to show

6

that [Gutierrez] associated with the criminal venture, participated in it, and sought, by his actions, to make it a success." *Boykin*, 785 F.3d at 1359.

Gutierrez argues that there was no evidence that Huerta was "Moreno," the person in the white Chrysler 300 who delivered methamphetamine to the informant. During closing argument, defense counsel repeatedly told the jury that Moreno was in fact Huerta. Regardless, it is irrelevant whether Huerta or an associate of his conducted the exchange. Gutierrez does not dispute "that *someone* committed the underlying substantive offense." *Shorty*, 741 F.3d at 970 (emphasis added). The identity of that person has no bearing on the evidence of Gutierrez's involvement.

**3.** Gutierrez also challenges the district court's admission of two other pieces of evidence: hearsay evidence that he had argued with someone about some lost drugs, and that he had ordered another person to deliver drugs, and, six months after the charged offense, someone using Huerta's wife's phone visited websites "regarding narcotics" nine times over a 10-day period. The admission of this evidence may well have been improper, but any errors were harmless beyond a reasonable doubt. In both instances the testimony was brief and the other evidence

7

of Gutierrez's guilt overwhelming. *See, e.g.*, *United States v. James*, 139 F.3d 709, 712 (9th Cir. 1998).

**4.** Gutierrez's challenge to his convictions for using a communications facility to commit a felony depends on reversal of the conspiracy and aiding and abetting counts. Thus, his argument necessarily fails because we affirm his convictions on those counts.

**5.** Finally, Gutierrez asserts that the district court committed procedural error by failing to determine the applicable range under the Sentencing Guidelines before sentencing him. A district court abuses its discretion by "failing to calculate (or improperly calculating) the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). In his reply brief, however, Gutierrez concedes that "[t]he district court adopted the guidelines calculations contained within the [pre-sentence report]." He argues instead that the base offense level was calculated incorrectly. Gutierrez reasons that because the jury found the quantity of actual methamphetamine to be less than 50 grams, his base offense level was 28 rather than 30. *See U.S. Sentencing Guidelines Manual* § 2D1.1(c)(6) (U.S. Sentencing Comm'n 2014).

Gutierrez stipulated that the substance sold to the informant was 87% pure methamphetamine. Therefore, the district court reasonably calculated the base offense level using "ice" rather than regular methamphetamine because the mixture was "of at least 80% purity." *Id.* § 2D1.1 cmt. C; *see United States v. Lee*, 725 F.3d 1159, 1166 n.7 (9th Cir. 2013) (explaining that, "[f]or example, a 10 KG mixture of methamphetamine of 80% purity would be 10 KG of Methamphetamine, 8 KG of Methamphetamine (actual), and 10 KG of Ice"). The base offense level for ice is calculated based on "the entire weight of [the] mixture." *U.S. Sentencing Guidelines Manual* § 2D1.1 cmt. A, B (U.S. Sentencing Comm'n 2014). Since Gutierrez stipulated that the methamphetamine mixture weighed 55.9 grams, the district court properly determined the base offense level to be 30, based on 55.9 grams of ice. *See id.* § 2D1.1(c)(5). There is no inconsistency between the district court's calculation and the jury's finding that "the . . . amount of 'pure' or 'actual' methamphetamine" was "less than fifty grams." Thus, *United States v. Pimentel-Lopez*, 828 F.3d 1173 (9th Cir. 2016), is inapplicable.

**AFFIRMED.**