# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
December 14, 2023

Lyle W. Cayce
Clerk

No. 23-10090
Summary Calendar

---

United States of America,

*Plaintiff—Appellee*,

*versus*

James Earl Carroll,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:22-CR-274-10

---

Before Willett, Duncan, and Wilson, *Circuit Judges*.

Per Curiam:[*]

James Earl Carroll pleaded guilty to possession with intent to distribute. He stipulated in a factual resume that he "knowingly possessed with intent to distribute a mixture or substance containing a detectable amount of methamphetamine." The methamphetamine was submitted to a laboratory, and the analysis "revealed 55.9 grams of methamphetamine

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

hydrochloride with a purity of 95 percent, resulting in 53.1 grams of methamphetamine (actual)." The presentence report (PSR) used the conversion rate applicable to actual methamphetamine to calculate the base offense level. *See* § 2D1.1(a)(5), (c), & comment (n.8(B), (D)). Carroll objected and requested a downward variance, arguing the district court should use the calculation rate for methamphetamine mixtures instead.[1] In response, the Government argued that the use of the actual methamphetamine rate was appropriate. The district court overruled the objection and sentenced Carroll to 150 months of imprisonment and three years of supervised release.

Carroll appeals his sentence, contending that because the factual resume and indictment referred to the methamphetamine in terms of "mixture and substance," the Government breached the plea agreement by "cross[ing] the line in arguing for something other than the terms set forth in the plea agreement." He requests specific performance and for his sentence to be vacated and remanded. Because this argument is raised for the first time on appeal, we review for plain error. *United States v. Hebron*, 684 F.3d 554, 557–58 (5th Cir. 2012).

When a defendant pleads guilty pursuant to a plea agreement, "the Government must strictly adhere to the terms and conditions of its promises in the agreement." *United States v. Munoz*, 408 F.3d 222, 226 (5th Cir. 2005) (citation omitted). To interpret "terms of a plea agreement, courts are to apply general principles of contract law" and must consider "whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement." *United States v. Cluff*, 857 F.3d 292, 298

---

[1] Higher sentences are imposed for actual methamphetamine than for a mixture or substance containing methamphetamine. *See* 21 U.S.C. § 841(b)(1)(A)(viii) & (b)(1)(B)(viii).

(5th Cir. 2017) (internal quotation marks and citation omitted). A breach can occur "when the Government agrees to one thing at the plea but then actively advocates for something different at sentencing." *United States v. Loza-Gracia*, 670 F.3d 639, 644 (5th Cir. 2012).

In the plea agreement, the Government agreed to not bring additional charges and to dismiss the remaining charges. The agreement contained no terms explicitly restricting what the Government could argue at sentencing and no reference to the calculation of Carroll's base offense level. However, it specified that the "document is a complete statement of the parties' agreement and may not be modified unless the modification is in writing and signed by all the parties," the agreement "supersedes any and all other promises, representations, understanding, and agreements that are or were made between the parties before" entry of the guilty plea, and "[n]o promises or representations have been made by the United States except as set forth in writing in this plea agreement." Accordingly, the plea agreement contains no indication that a "reasonable understanding" includes any agreement as to base offense level calculation. *Cluff*, 857 F.3d 292 at 298.

Carroll seizes on language in the indictment and factual resume because they refer to the methamphetamine in terms of "mixture and substance." But the factual resume states that "it is not intended to be a complete accounting of all the facts and events related to the offense charged in this case," and that its "limited purpose . . . is to demonstrate that a factual basis exists to support the defendant's guilty plea." Mere reference in this context does not evidence that a "reasonable understanding" includes any agreement as to the calculation of the base offense level.

Despite the language in the agreement and factual resume, Carroll relies on two cases to argue that we should nevertheless find a breach here. Both are distinguishable. First, in *United States v. Lee*, the defendant

stipulated that she supplied "over three kilograms of methamphetamine hydrochloride (ice)." 725 F.3d 1159, 1166 (9th Cir. 2013). "Ice" has a specific meaning under the Sentencing Guidelines, but the defendant argued that she understood "ice" to reference methamphetamine "generally" when she pleaded guilty. *Id.* The Ninth Circuit found a breach, in part because none of the seized methamphetamine tested qualified as "ice." *Id.* at 1167. But here, there is no similar supporting evidence of Carroll's purported understanding. Second, in *United States v. Edgell*, the Government specifically promised "to limit [the defendant's] relevant drug conduct to less than five (5) grams of substances containing a detectable amount of methamphetamine." 914 F.3d 281, 287 (4th Cir. 2019) (internal quotation marks omitted). After the plea agreement was signed, lab results showed the substances were actual methamphetamine. The Government then advocated at sentencing for a higher range. The Fourth Circuit found this to be a breach. *Id.* at 288–89. But here, the Government made no such promise, and thus was not similarly constrained at sentencing.

Because there was no agreement as to the base offense level calculation and the cases Carroll relies on are distinguishable, we conclude that the Government did not breach a promise it made. Indeed, we have found there to be no breach in similar circumstances. *See United States v. Hinojosa*, 749 F.3d 407, 413–14 (5th Cir. 2014) (finding no breach where the plea agreement included no promise from the Government as to drug quantity or what the Government could argue). Carroll has not demonstrated the existence of error, plain or otherwise. *See Hebron*, 684 F.3d at 557-58.

AFFIRMED.