**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-4432

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOHNNY SYLVESTER EDGELL,

Defendant - Appellant.

Appeal from the United States District Court for Northern District of West Virginia, at Clarksburg. Irene M. Keeley, Senior District Judge. (1:16-cr-00045-IMK-MJA-1)

Argued: November 1, 2018                        Decided: January 25, 2019

Before GREGORY, Chief Judge, NIEMEYER and HARRIS, Circuit Judges.

Sentence vacated and case remanded by published opinion. Judge Harris wrote the opinion, in which Chief Judge Gregory and Judge Niemeyer joined.

**ARGUED:** Linn Richard Walker, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Clarksburg, West Virginia, for Appellant. Stephen Donald Warner, OFFICE OF THE UNITED STATES ATTORNEY, Elkins, West Virginia, for Appellee. **ON BRIEF:** Kristen M. Leddy, Research and Writing Specialist, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Clarksburg, West Virginia, for Appellant. William J. Powell, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

PAMELA HARRIS, Circuit Judge:

After negotiating a plea agreement with the government, Johnny Sylvester Edgell pleaded guilty to one count of possessing a firearm as an unlawful drug user and one count of distributing methamphetamine. In exchange for that plea, the government agreed to a stipulation limiting Edgell's total drug conduct to "less than five (5) grams of substances containing a detectable amount of methamphetamine," J.A. 193, which corresponded to an advisory sentencing range of 10 to 16 months' imprisonment. But after the agreement was signed, the government received lab results showing that the substances in question were actual methamphetamine, and once the government shared that information with the probation office, Edgell's sentencing range increased to 30 to 37 months. At sentencing, the government advocated for a sentence consistent with that elevated range, and Edgell was sentenced to 30 months in prison.

Edgell contends that the government breached his plea agreement in two respects: first, by disclosing the post-plea lab report to the probation office and sentencing court; and second, by failing to honor the agreement at sentencing, and instead advocating for a sentence inconsistent with its original stipulation. We cannot agree that the government breached its plea agreement by disclosing relevant and accurate information to the sentencing court. But we agree with Edgell that the government's conduct at the sentencing hearing denied him the benefit of his bargain. Given the government's breach, we vacate Edgell's sentence and remand for resentencing before a different district judge.

**I.**

2

Following three controlled buys in July 2015, Johnny Sylvester Edgell was indicted by a federal grand jury on three counts of distributing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and one count of unlawfully possessing a firearm, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2).

Edgell and the government negotiated a plea agreement. For his part, Edgell agreed to plead guilty to the single firearm charge and to one count of distributing methamphetamine. In exchange, the government agreed to a stipulation that Edgell's drug conduct involved "less than five (5) grams of substances containing a detectable amount of methamphetamine" – that is, substances of a lower purity level than actual methamphetamine. J.A. 193. Pursuant to that stipulation, Edgell's advisory sentencing range would be 10 to 16 months' imprisonment.[1] The government additionally agreed to "recommend that any sentence of incarceration imposed . . . be at the lowest end of the applicable guideline range," J.A. 193, and to dismiss the remaining counts of the indictment.

The plea agreement also contained certain reservations. First, it specified that the sentencing court was not bound by the parties' stipulations and was not required to accept

---

[1] While the plea agreement did not specify the resulting sentencing range, the parties do not dispute that the agreement contemplated a range of 10 to 16 months' imprisonment. The agreement's drug conduct stipulation produces a base offense level of 12. *See* U.S.S.G. § 2D1.1(c)(14). Considering the relevant adjustments – including a two-level enhancement for his possession of a dangerous weapon and a two-level reduction for acceptance of responsibility, *see* U.S.S.G. §§ 2D1.1(b)(1), 3E1.1 – and Edgell's Category I criminal history, Edgell's advisory sentencing range under the agreement indeed would have been 10 to 16 months. *See* U.S.S.G. ch. 5, pt. A (sentencing table).

them. The agreement also reserved the government's "right to provide to the Court and the United States Probation Office . . . relevant information including defendant's background, criminal record, offense charged in the indictment and other pertinent data . . . as will enable the Court to exercise its sentencing discretion," and "to respond to any questions raised by the Court, to correct any inaccuracies or inadequacies in the anticipated pre-sentence report, and to respond to any written or oral statements made by the Court, by defendant or his counsel." J.A. 194.

At the time the government entered into its agreement with Edgell, it had requested, but not yet received, a laboratory analysis of the substances distributed by Edgell. When that laboratory report was returned to the government – only after the agreement was finalized – it revealed that the substances in question were not merely "substances containing a detectable amount of methamphetamine," as the parties had stipulated, J.A. 193, but instead actual methamphetamine. The government disclosed that information to the probation office, which incorporated it into its Presentence Report (PSR), attributing 3.5344 grams of actual methamphetamine to Edgell. As a result, the PSR calculated Edgell's guidelines sentencing range as 30 to 37 months' imprisonment, rather than the 10 to 16 months anticipated under the plea agreement.[2] In light of that discrepancy, the PSR suggested that a downward variance might be appropriate.

---

[2] Edgell's new drug conduct resulted in an offense level of 20. *See* U.S.S.G. § 2D1.1(c)(10). Edgell received a two-level enhancement for possessing a dangerous weapon under U.S.S.G. § 2D1.1(b)(1) and a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b), for a total offense level of 19. Combined with (Continued)

4

At sentencing, the district court acknowledged that the PSR's factual findings and sentencing calculations were "certainly different from . . . the parties' expectation from the plea agreement." J.A. 91. Nevertheless, and without objection from either party, the court adopted the PSR's advisory guidelines range of 30 to 37 months.

Consistent with the PSR's suggestion, Edgell requested a downward variance. The government did not join Edgell's request. Nor did it recommend a sentence consistent with the agreed-upon stipulation as to drug conduct and the corresponding 10 to 16 months sentencing range. Instead, purporting to follow its commitments under the plea agreement, the government advocated for a sentence at the "low end" of the guidelines range adopted by the court, or 30 months' imprisonment. J.A. 108. The court followed the government's recommendation and sentenced Edgell to 30 months' imprisonment, to be followed by a term of three years of supervised release. Edgell timely appealed.

**II.**

Edgell contends the government breached its plea agreement by disclosing the post-agreement lab results to the probation office and the sentencing court, and by failing at sentencing to honor the agreement's explicit drug conduct stipulation – that he was responsible for distributing "less than five (5) grams of substances containing a detectable amount of methamphetamine," J.A. 193. Because Edgell did not challenge the

---

his Category I criminal history, the resulting sentencing range was 30 to 37 months' imprisonment. *See* U.S.S.G. ch. 5, pt. A (sentencing table).

government's purported breach of the plea agreement before the district court, we review his claim for plain error. *United States v. Tate*, 845 F.3d 571, 575 (4th Cir. 2017) (citing Fed. R. Crim. P. 52(b)). Under that standard, Edgell must show that the government plainly breached its plea agreement with him and that the breach both affected his substantial rights and called into question the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Dawson*, 587 F.3d 640, 645 (4th Cir. 2009). For the reasons given below, we find that Edgell has satisfied that demanding standard.

## A.

We first consider whether the government breached the clear requirements of its plea agreement with Edgell. "Plea agreements are grounded in contract law," and as with any contract, each party is entitled to receive the benefit of his bargain. *Tate*, 845 F.3d at 575. While "we employ traditional principles of contract law as a guide" in enforcing plea agreements, "we nonetheless give plea agreements greater scrutiny than we would apply to a commercial contract because a defendant's fundamental and constitutional rights are implicated when he is induced to plead guilty by reason of a plea agreement." *United States v. Warner*, 820 F.3d 678, 683 (4th Cir. 2016) (internal quotation marks and brackets omitted). At a minimum, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971).

Here, Edgell maintains that his plea agreement rested on the government's promise to limit his relevant drug conduct to "less than five (5) grams of substances containing a

6

detectable amount of methamphetamine," J.A. 193, and the associated sentencing range, and that he was denied the benefit of his bargain when the government breached that promise. Specifically, Edgell challenges both the government's disclosure of the post-agreement lab results to the probation office and sentencing court, and the government's failure at sentencing to defend or advocate in any way for the parties' drug conduct stipulation. We address each of these challenges in turn.

To the extent Edgell contends that the government breached its plea agreement by disclosing lab results to the probation office and court, we must disagree. The government has a "duty to furnish complete and accurate information at sentencing," and we have expressed doubt as to whether a plea agreement may abridge that duty. *United States v. Crisp*, 817 F.2d 256, 259 (4th Cir. 1987). Other courts of appeals, too, have emphasized that even where a plea agreement binds the government to certain sentencing recommendations, the government retains a duty "to ensure that the court has complete and accurate information, enabling the court to impose an appropriate sentence." *United States v. Maldonado*, 215 F.3d 1046, 1052 (9th Cir. 2000); *see also United States v. Casillas*, 853 F.3d 215, 218 (5th Cir. 2017) (government may not "stand mute in the face of factual inaccuracies or [] withhold relevant factual information from the court" (internal quotation marks omitted)); *United States v. Ubiles-Rosario*, 867 F.3d 277, 283 (1st Cir. 2017) ("[A] plea agreement may not abridge the [government's] solemn obligation to provide relevant information to the sentencing court." (internal quotation marks omitted)).

Indeed, consistent with this understanding, Edgell's plea agreement does not purport to limit or override the government's duty of candor to the court. Instead, it recognizes

7

that duty, and expressly reserves the government's "right to provide to the Court and the United States Probation Office . . . relevant information including defendant's background, criminal record, offense charged in the indictment and other pertinent data . . . as will enable the Court to exercise its sentencing discretion." J.A. 194. The government's disclosure of the lab results, which went directly to the offense charged in the indictment and to Edgell's base offense calculation, was thus consistent with both the parties' plea agreement and the government's broader duty to provide complete and accurate information to the sentencing court.

But the government did more than that here. And we agree with Edgell that the government crossed the line and breached its plea agreement when it failed at sentencing to honor its drug conduct stipulation. As one court of appeals to consider this precise question has explained, "Although the Government has a duty to provide the sentencing court with relevant factual information and to correct misstatements, it may not hide behind this duty to advocate a position that contradicts its promises in a plea agreement." *United States v. Munoz*, 408 F.3d 222, 227 (5th Cir. 2005). Instead, the government must carefully balance its duty of candor to the sentencing court with the sometimes competing – but equally solemn – duty to honor its commitments under a plea agreement. *See United States v. Saxena*, 229 F.3d 1, 5 (1st Cir. 2000). And as courts that have addressed the question agree, this balance is achieved where the government makes the necessary disclosures to the sentencing court, but nevertheless "continue[s] to advocate for acceptance of the agreement." *Casillas*, 853 F.3d at 218; *see also United States v. Franco–Lopez*, 312 F.3d 984, 993 (9th Cir. 2002) ("We conclude that the government did not breach the plea

8

agreement by providing information to the Probation Department regarding [the defendant's] criminal activity while recommending successfully to the district court that it not rely on that information in sentencing."); *Saxena*, 229 F.3d at 7 (finding no breach where the government disclosed information inconsistent with the plea agreement, but nevertheless "resolutely stood by the bottom-line recommendation that [it] had committed to make").

The government failed to strike the necessary balance here. At sentencing, the government did not "continue to advocate for acceptance," *Casillas*, 853 F.3d at 218, of its agreement with Edgell. It did not ask the court to impose a sentence consistent with the 10 to 16 months range that corresponded to its drug conduct stipulation. It did not join in Edgell's request for a downward variance. And it did not otherwise encourage the court to consider in any way the factual stipulation to which it agreed in exchange for Edgell's guilty plea. Instead, the government affirmatively undermined the plea agreement by requesting a sentence inconsistent with its stipulation, effectively tripling its recommended sentence from the 10 months anticipated under the plea agreement to the 30 months at the low end of the post-lab report range calculated by the PSR.[3]

---

[3] We appreciate the awkward situation the government faced at sentencing; balancing the competing duties of candor to the court and adherence to a plea agreement can be a difficult task under circumstances like these. But this is not the first case in which a prosecutor was required to walk that line. In *United States v. Saxena*, 229 F.3d 1, 4 (1st Cir. 2000), for instance, the government had agreed in a plea agreement to recommend a sentence of 24 months' imprisonment, consistent with an anticipated sentencing range of 24 to 30 months. At sentencing, however, it disclosed to the court post-plea activities by the defendant that led the court to adopt a higher guidelines range of 33 to 41 months. *Id.* at 4–5. But when it came time to make a sentencing recommendation, the prosecutor (Continued)

At oral argument, the government suggested for the first time that its sentencing recommendation did not breach the plea agreement because Edgell "assumed the risk" that it would discover the actual nature of the substances he distributed. But it was the government, of course, that knew of an outstanding lab report and nevertheless decided to go forward with the plea agreement without waiting for the results, thus assuming precisely the risk that materialized: that the lab report ultimately would come back with information inconsistent with the agreement's drug conduct stipulation. The government's apparent misjudgment about the importance of the lab report is not grounds for relieving the government of its obligations under the plea agreement.

Moreover, the government's assumption-of-risk argument misconstrues the very nature of plea agreements. Plea agreements, as any contract, bind one party to do something the other party desires in exchange for some benefit. *United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005). Here, the government agreed to the drug conduct stipulation, which came with a corresponding sentencing range of 10 to 16 months, and to

---

continued to advocate for the 24 months to which the parties had agreed, explaining to the court:

> The government's recommendation in this case is pursuant to our plea agreement. And I'm well aware, your Honor, of the fact that my recommendation is below what the Court has determined the guidelines applicable to be. Nonetheless, bound by that agreement the government does recommend a sentence of 24 months which, of course, was based on the calculations [of] the parties.

*Id.* at 7. Because it "resolutely stood by" a sentencing recommendation consistent with its plea agreement, the First Circuit concluded in *Saxena*, the government had not breached the agreement, notwithstanding its disclosure of post-plea information to the court. *Id.* at 7–8.

recommend a sentence at the bottom of the applicable range. In return, Edgell relieved the government of its burden to prove his guilt beyond a reasonable doubt and eliminated the need for the government to expend its resources on a full criminal trial. Both parties bound themselves to their respective commitments, and each "assume[d] the risk of future changes in circumstances in light of which [their] bargain may prove to have been a bad one." *Id.* Just as we often enforce plea agreements against criminal defendants even in the face of subsequent, favorable changes in the law, *see, e.g.*, *United States v. Archie*, 771 F.3d 217, 222 (4th Cir. 2014), so, too, must we enforce plea agreements that may later prove less advantageous than the government had anticipated.

The government's failure at sentencing to stand by its drug conduct stipulation, and its recommendation of a sentence inconsistent with that stipulation, denied Edgell a central benefit of his bargain. It follows that the government breached its plea agreement with Edgell. *See Santobello*, 404 U.S. at 262. And because the government's duties pursuant to the plea agreement were sufficiently clear – that is, the drug conduct stipulation was unambiguous – that error was plain. *Cf. Puckett v. United States*, 556 U.S. 129, 143 (2009) ("Not all breaches [of plea agreements] will be clear or obvious. Plea agreements are not always models of draftsmanship, so the scope of the Government's commitments will on occasion be open to doubt."). Edgell therefore satisfies the initial requirements of plain error review.

**B.**

Having found that the government plainly breached its plea agreement at sentencing, we next consider whether that breach affected Edgell's substantial rights. A

11

breach of a plea agreement affects a defendant's substantial rights only if it prejudices the defendant. *Puckett*, 556 U.S. at 135. And a defendant suffers no prejudice where (1) he obtained the benefits of the plea agreement despite the government's breach – that is, where he nevertheless received the sentence the prosecutor promised to request – or (2) "he likely would not have obtained those benefits in any event." *Id.* at 141–42. Where the record does not reflect either of the above circumstances, "we are free to conclude that the defendant has shown a reasonable probability, based on the appellate record as a whole, that but for the error he would have received a more favorable sentence." *Dawson*, 587 F.3d at 645 (internal quotation marks omitted).

Edgell has made the requisite showing of potential prejudice. First, there is no question that Edgell did not receive the benefit of his bargain: He was sentenced to 30 months' imprisonment, a sentence that far exceeded the sentencing range that would have resulted from the drug conduct stipulation in the parties' plea agreement. Second, we cannot conclude from this record that, had the government honored the plea agreement, there would have been no benefit to Edgell. It is true that, under the plea agreement, the sentencing court was not bound by the parties' stipulation,[4] and the court did voice a

---

[4] That the court was not bound by the drug conduct stipulation, of course, does not excuse the government from its commitments under the agreement. The parties "did intend for the stipulation to bind the government, and it is the government's breach of that agreement that is the focus of our inquiry." *United States v. Boatner*, 966 F.2d 1575, 1579 (11th Cir. 1992); *see also United States v. Normil*, 129 F.3d 1261, at *4 (4th Cir. 1997) (unpublished table decision) ("To the extent that a stipulation entered by the government is essential to the defendant's bargain, it is binding. This is true even if the court is not bound by the stipulation." (citation omitted)).

concern that the plea agreement – and the sentencing range it contemplated – did not account for the severity of Edgell's offenses. But at the same time, the district court made clear that it was considering a sentence well below the 30 to 37 months range it had adopted. And in the end, it adopted precisely the sentence the government recommended: 30 months. Had the government instead urged the court to impose a sentence consistent with its plea agreement, or joined in Edgell's request for a downward variance, then the court may well have taken the government's position into account and arrived at a sentence within, or at least closer to, the sentencing range anticipated by the plea agreement. Edgell thus has "demonstrated a reasonable probability that the outcome of his sentencing would have been different had the government made the appropriate recommendation." *Dawson*, 587 F.3d at 646; *cf. United States v. Navarro*, 817 F.3d 494, 501 (7th Cir. 2016) ("[C]ases where we have found that the defendant failed to prove the prejudice prong are ones in which the record compellingly reflects the sentencing court was not influenced by the government's recommendation."). Accordingly, we find that the government's breach of the plea agreement affected Edgell's substantial rights.

## C.

We similarly find that the government's breach of the plea agreement seriously affected the "fairness, integrity, or public reputation of judicial proceedings," *Puckett*, 556 U.S. at 135 (internal quotation marks omitted). The Supreme Court has cautioned that this prong of plain error "is meant to be applied on a case-specific and fact-intensive basis," and is not automatically satisfied whenever the government breaches a plea agreement. *Id.* at 142–43. "Nevertheless, . . . courts have recognized that the Government's breach of a

13

plea agreement constitutes a particularly egregious error that, *in the absence of strong countervailing factors*, seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Kirkland*, 851 F.3d 499, 505 (5th Cir. 2017) (emphasis added) (collecting cases). This is so because "[t]he breach of a promise made to induce a defendant to enter a guilty plea – and thereby waive important constitutional rights – harms not only the defendant, but . . . involves the honor of the government, [and] public confidence in the fair administration of justice." *United States v. Lewis*, 633 F.3d 262, 269 (4th Cir. 2011) (internal quotation marks omitted); *see also United States v. Peglera*, 33 F.3d 412, 414 (4th Cir. 1994) ("Because a government that lives up to its commitments is the essence of liberty under law, the harm generated by allowing the government to forego its plea bargain obligations is one which cannot be tolerated.").

Here, the government does not contest that its purported breach affects the integrity, fairness, or public reputation of plea agreements and judicial proceedings generally. Accordingly, because Edgell has shown the government failed to honor its clear commitments under his plea agreement and the government fails to provide even a single countervailing factor, we find Edgell has satisfied the final requirement of plain error review.

## III.

Having found that the government breached the plea agreement and that the breach constitutes plain and reversible error, the only remaining issue is the appropriate remedy. "In most cases in which the Government has breached its agreement with the defendant,

14

we prefer to leave the fashioning of appropriate relief to the sound discretion of the district court." *United States v. Wood*, 378 F.3d 342, 350 n.6 (4th Cir. 2004) (internal quotation marks omitted).  Where, however, the defendant does not seek to withdraw his guilty plea and instead requests only "the lesser relief of specific performance of the agreement[,] . . . then the court should honor that election," and "remand with the direction that the defendant 'be resentenced by a different judge.'"  *Warner*, 820 F.3d at 685 (quoting *Santobello*, 404 U.S. at 263). [5]

Because Edgell seeks only specific performance, we will honor his election.

## IV.

For the foregoing reasons, we find the government breached its plea agreement with Edgell and that this breach constitutes reversible plain error.  We do not doubt that the government's breach was the result of inadvertence rather than bad faith, but Edgell nonetheless was denied the benefit of his bargain.  Accordingly, we vacate Edgell's sentence and remand the case for resentencing before a different district judge.

*SENTENCE VACATED AND CASE REMANDED*

---

[5] When specific performance is elected by a defendant, resentencing always takes place before a different judge.  *See Peglera*, 33 F.3d at 415 ("We remand the case to a different district judge for resentencing as we are required to do.")  As the Supreme Court has emphasized, that standard remedy "is in no sense to question the fairness of the sentencing judge," *Santobello*, 404 U.S. at 263, and our decision today should not be understood as a "reflection on [Edgell's] trial judge, who handled the case admirably under the circumstances," *Peglera*, 33 F.3d at 415.

15