**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 21-4504**

_____

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

   v.

ALVIN JOHNSON, a/k/a Apple Cake,

        Defendant – Appellant.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at Elizabeth City.  Louise W. Flanagan, District Judge.  (2:18-cr-00021-FL-1)

_____

Argued:  October 27, 2023                     Decided:  October 16, 2024

_____

Before GREGORY, RICHARDSON, and BENJAMIN, Circuit Judges.

_____

Affirmed by published opinion.  Judge Benjamin wrote the opinion, in which Judge Gregory and Judge Richardson joined.

_____

**ARGUED**:  Daniel Baker McIntyre, III, Charlotte, North Carolina, for Appellant.  John Gibbons, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF**:  Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, Joshua L. Rogers, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

_____

DEANDREA GIST BENJAMIN, Circuit Judge:

Alvin Johnson accepted a written plea agreement and pled guilty to possession with intent to distribute a quantity of cocaine, in violation of 21 U.S.C. § 841(a)(1). Johnson now appeals his 120-month sentence and argues that the Government breached the plea agreement by moving for a sentence above the applicable United States Sentencing Guidelines range as recalculated on resentencing ("revised Guidelines range"). Johnson did not challenge the Government's motion before the district court; therefore our review is for plain error. Finding none, we affirm.

I.

In July 2018, a grand jury in the Eastern District of North Carolina returned a two-count indictment charging Johnson with conspiracy to distribute and possess with the intent to distribute a quantity of cocaine, in violation of 21 U.S.C. § § 841(a)(1) and 846 ("Count One"), and possession with the intent to distribute a quantity of cocaine, in violation of 21 U.S.C. § 841(a)(1) ("Count Two"). The indictment also alleged that Johnson committed these crimes after sustaining at least one prior conviction for a felony drug offense, thus providing notice of the Government's intent to seek an enhanced sentence under 21 U.S.C. §§ 841(b) and 851.

In November 2018, Johnson and the Government negotiated a written plea agreement. The agreement stated that it was "the full and complete record of the Plea Agreement . . . [and] [t]here [were] no other agreements between the parties in addition to or different from the terms herein." J.A. 88. Johnson agreed to plead guilty to Count Two,

2

which he understood had a 20-year maximum statutory term of imprisonment. The Government agreed to dismiss Count One. Then in paragraph 5 of the agreement, written under Fed. R. Crim. P. 11(c)(1)(B), the parties stipulated as to the application of certain Sentencing Guidelines provisions, while making clear that the sentencing court was not required to adopt these stipulations. Specifically, in paragraph 5(a), the Government agreed that a downward adjustment of two levels was warranted because Johnson accepted responsibility for the crime. And the parties stipulated in paragraph 5(b) as to the relevant drug quantity and its base offense level equivalent. The stipulation read:

> The relevant, readily provable, quantity of narcotic to be used in the determination of the base offense level pursuant to U.S.S.G § 2D1.1 is at least eighty (80) kilograms but less than one-hundred (100) kilograms of marijuana equivalent. This is the equivalent of a Level 22 Base Offense level under U.S.S.G. § 2D1.1 (2016).

J.A. 95 (hereinafter "the Guidelines Stipulation").

The plea agreement also contained certain reservations from both parties. Johnson reserved "the right to appeal from a sentence in excess of the applicable [] Guideline range that is established at sentencing" in paragraph 2(c). J.A. 88. The Government reserved "the right to make a sentence recommendation" in paragraph 4(b) as well as "the right at sentencing to present any evidence and information pursuant to 18 U.S.C. § 3661, to offer argument or rebuttal . . . and to respond to any motions or objections filed by the Defendant" in paragraph 4(c). J.A. 93.

A magistrate judge held a Fed. R. Crim. P. Rule 11 hearing. The magistrate judge asked Johnson if, before signing, he had an "opportunity to read and discuss [his] plea agreement with [his] attorney," to which Johnson responded, "Yes, sir." J.A. 45. Johnson

3

also answered in the affirmative when the magistrate judge asked if "the plea agreement represent[ed], in its entirety, any and all agreements that you have with the United States." *Id.* The judge then questioned if Johnson "underst[ood] the terms, the language, the words, the sentences, even any of the legal phrases that are used in this plea agreement after [he] discussed it with [defense counsel]," and Johnson replied, "Yes, I understood it." *Id.* at 45–46. There was no discussion of the Guidelines Stipulation specifically. The magistrate judge concluded that Johnson's plea was made knowingly and voluntarily.

Johnson's presentence report ("PSR") classified him as a career offender under U.S.S.G. § 4B1.1. The statute classifies a defendant as a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a). The PSR determined that Count Two was a felony controlled substance offense. Further, it determined that Johnson had at least two prior felony controlled substance offense convictions—both being North Carolina state offenses for possession with the intent to sell or deliver cocaine in 2002 and 2009. With his career offender designation, Johnson's base offense level increased from 22 to 32 under U.S.S.G. § 4B1.1(b)(3), and his criminal history category increased from V to VI under U.S.S.G. § 4B1.1(b). A three-level total reduction for his timely acceptance of responsibility was

4

applied[1], resulting in a total adjusted offense level of 29. Johnson's Guidelines Range was calculated at 151-188 months.

Johnson objected to his career offender designation. At sentencing on May 21, 2019, he argued that his 2002 North Carolina felony drug conviction was not a proper career offender predicate. Johnson thus moved for a downward variance to 71 months. While the district court acknowledged that the conviction was potentially erroneous, it ultimately ruled that there was insufficient evidence to sustain the objection. The district court granted the variance request, although not as low as Johnson requested, and sentenced him to 128-months' imprisonment followed by a three-year term of supervised release.

Johnson timely appealed his sentence. Although represented by new counsel, he submitted several *pro se* filings that asserted his 2002 North Carolina drug conviction had been modified such that it no longer qualified as a felony for purposes of a career offender predicate offense. *See* ECF Nos. 17–18, 21, 23–25, 27. This court directed Johnson's counsel to address this issue, and in response, counsel moved to hold the matter in abeyance until the resolution of Johnson's ongoing state postconviction proceedings regarding the 2002 conviction. ECF Nos. 22, 30. This court granted the abeyance motion. ECF No. 31.

Almost a year later, Johnson's counsel filed a consent motion to remand the matter to the district court for resentencing. The motion asserted that Johnson had successfully

---

[1] As noted above, paragraph 5(a) of the plea agreement set forth a downward adjustment of two levels for acceptance of responsibility for the crime. The PSR then found a decrease by one additional level was warranted because Johnson "assisted authorities in the investigation or prosecution of [his] own misconduct by timely notifying authorities of [his] intention to enter a plea of guilty." J.A. 173–74. This resulted in the three-level total reduction.

challenged his 2002 North Carolina drug conviction, and the conviction was modified by the state court to reflect a range of 8-12 months' imprisonment instead of 11-14 months. Therefore, Johnson claimed that the conviction no longer qualified as a felony for purposes of the career offender predicate offenses. Thus, Johnson did not qualify as a career offender and was no longer subject to an enhanced guidelines calculation on this ground. This court granted the motion.

On remand, the U.S. Probation Office submitted an addendum to the PSR that addressed the effect of the adjustment to Johnson's 2002 North Carolina state court conviction. Probation conceded that the conviction no longer qualified as a career offender predicate offense and therefore Johnson was no longer properly designated a career offender. His criminal history category was reduced to V. Based on the Guidelines Stipulation in the plea agreement, Probation recalculated Johnson's base offense level at 22. The same three-level timely acceptance of responsibility reduction was applied, and the total adjusted offense level was recalculated at 19. The revised Guidelines range was calculated as 57–71 months. Probation also noted that during Johnson's time in jail, he had not incurred any disciplinary infractions and had completed a variety of educational and vocational courses.

The Government filed a motion for an upward departure under U.S.S.G. § 4A1.3(a)[2], or in the alternative, an upward variance under the § 3553(a) factors.[3] The motion emphasized how Johnson's criminal history category inadequately represented the seriousness of his record and the likelihood that he would reoffend. The Government argued that, given the characteristics and seriousness of Johnson's offense conduct, his extensive list of prior convictions, and ongoing drug distribution efforts, a sentence above the revised Guidelines range was necessary to protect the public, promote respect for the law, and deter future misconduct.

At resentencing, the Government reiterated its position from the motion and argued that although Johnson's career offender designation was no longer valid, he was "in essence a career offender." J.A. 129. The Government based this argument on his criminal record, which included "three or four separate" convictions of possession with intent to sell or deliver controlled substances, and that the punishment was light despite engaging in serious criminal conduct. Thus, the Government requested a sentence within the

---

[2] "If reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted." U.S.S.G. § 4A1.3(a)(1).

[3] Section 3553(a) lists seven factors a court must consider when sentencing a defendant. The district court has the discretion to vary upwards from the calculated Guidelines range based on the factors if the sentence imposed is reasonable and the court "adequately explain[s] the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall v. United States*, 552 U.S. 38, 50 (2007) (internal citation omitted).

7

Guidelines range of 110-137 months, and ultimately asked the court to reinstate the original 128-month sentence.

Johnson opposed the Government's motion but presented no argument that the Government breached the plea agreement in making its motion. He requested a downward variance to a 48-month sentence with an extended five-year supervised release term. In support of his argument, Johnson emphasized that his drug trafficking crimes were nonviolent because they did not involve a weapon and no violence or injuries occurred. He also argued prior incarceration and participation in prison programming rehabilitated him, that he would not recidivate due to his age, and would, upon his release from federal prison, obtain employment.

After hearing the parties' arguments, the district court noted that Johnson's criminal record showed him to be "a repeat drug dealer; and as such, a dangerous person." J.A. 139. The court observed Johnson's "lack of respect for law enforcement," and noted his multiple prior convictions and his refusal to conform to the law despite his contacts with the criminal justice system. Further, the court opined, "there's still a compelling need to protect the public from [Johnson], to discourage this type of conduct, and to promote respect for the law" and, "the record [Johnson] bring[s] into court is one that paints a picture of somebody who, when he gets out, is very likely to go back and do what he knows: deal drugs." *Id.*

The district court took the mitigating factors offered by Johnson into consideration but explained that a sentence within the 57-71 months revised Guidelines range did not satisfy the purposes of sentencing. Instead, the court varied upward from the revised Guidelines range and found that a sentence of 120-months' imprisonment followed by

8

three years of supervised release accomplished the goals of sentencing.  The district court entered its amended judgment and Johnson timely appealed.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

II.

A.

Johnson's argument on appeal is that the Government breached the plea agreement by moving for an upward departure or variance from the revised Guidelines range.

When a claim of breach of the plea agreement has been preserved in the district court, we review the court's factual findings for clear error and its application of contract interpretation principles de novo.  *United States v. Lewis*, 633 F.3d 262, 267 (4th Cir. 2011).  But because Johnson did not challenge before the district court the Government's argument for an upward departure or variance from the revised Guidelines range as a violation or breach of the plea agreement, "our review is for plain error."  *United States v. Dawson*, 587 F.3d 640, 645 (4th Cir. 2009) (citing *Puckett v. United States*, 556 U.S. 129, 133–34 (2009)).

To obtain reversal under plain error review, Johnson "must show that the [G]overnment plainly breached its plea agreement with him *and* that the breach both affected his substantial rights and called into question the fairness, integrity, or public reputation of judicial proceedings."  *United States v. Edgell*, 914 F.3d 281, 286–87 (4th Cir. 2019) (emphasis added).  For the reasons explained below, we find that Johnson has not met the requirements under this heightened standard.

B.

We begin by considering whether the Government breached the plea agreement with Johnson. A plea agreement is fundamentally a contract between the government and a defendant. *Lewis*, 633 F.3d at 269. Thus, the interpretation of a plea agreement is "grounded in contract law, and as with any contract, each party is entitled to receive the benefit of the bargain." *Edgell*, 914 F.3d at 287 (internal quotation marks omitted). Although "we employ traditional principles of contract law as a guide in enforcing plea agreements, we nonetheless give plea agreements greater scrutiny than we would apply to a commercial contract because a defendant's fundamental and constitutional rights are implicated when he is induced to plead guilty by reason of a plea agreement." *Id.* (internal quotation marks omitted). Appropriately, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). Therefore, the government is in breach if a defendant has "failed to receive the benefit of his bargain." *United States v. Peglera*, 33 F.3d 412, 415 (4th Cir. 1994). But "[a] central tenet of contract law is that no party is obligated to provide more than is specific in the agreement itself." *Id.* at 413. Accordingly, "[w]hile the government must be held to the promises it made, it will not be bound to those it did not make." *United States v. Fentress*, 792 F.2d 461, 464 (4th Cir. 1986). "To do otherwise is to strip the bargaining process itself of meaning and content." *Id.* at 465.

"In determining what promises the government made, we read a plea agreement's plain language in its ordinary sense." *United States v. Tate*, 845 F.3d 571, 575 (4th Cir.

10

2017) (internal quotation marks omitted).  Our circuit has noted that, just like with contract law, a fundamental canon in construing plea agreements is that the agreement should be "interpreted as a whole."  *United States v. Barefoot*, 754 F.3d 226, 246 (4th Cir. 2014) (internal quotation marks omitted).  In doing so, courts should choose an interpretation "which gives effect to all provisions of the contract," as opposed "to one which renders a portion of the writing superfluous, useless, or inexplicable."  *United States v. Holbrook*, 368 F.3d 415, 428 (4th Cir. 2004), *vacated on other grounds*, *Holbrook v. United States*, 545 U.S. 1125 (2005) (mem.).

## C.

Johnson argues that the plea agreement is vague as to the scope of the Government's reserved right to make a sentencing recommendation.  He argues, reading the agreement as a whole, the Guidelines Stipulation must be interpreted to limit the Government's sentencing recommendation rights.  Specifically, he believes that by stipulating in the plea agreement to a specified drug quantity attributable to him and its equivalent base offense level of 22, the Government is bound by its reservation provision to recommend a sentence within the resulting Guidelines range—here, the 57-71 months revised Guidelines range. Johnson argues that the Government's reserved right to make a sentencing recommendation affords him "no sentencing benefit" to "stipulating to a guidelines range" if interpreted to give the Government the right to request any sentence up to the statutory maximum.  Alternatively, Johnson argues that because the plea agreement is silent as to the Government's right to make a sentencing recommendation above the "agreed upon guidelines range," the Government breached the plea agreement by filing a motion for an

11

upward departure and requesting a sentencing in excess of that range. In other words, because the plea agreement is silent as to this right, no such right exists. We disagree with Johnson for several reasons.

1.

First, a reading of the Guidelines stipulation in paragraph 5(b) of the plea agreement reveals no agreement by or requirement of the Government to recommend a sentence within a Guidelines range that corresponded with the base offense level for that drug weight. Paragraph 5(b) reads:

> The relevant, readily provable, quantity of narcotic to be used in the determination of the base offense level pursuant to U.S.S.G § 2D1.1 is at least eighty (80) kilograms but less than one hundred (100) kilograms of marijuana equivalent. This is the equivalent of a Level 22 Base Offense level under U.S.S.G. § 2D1.1 (2016).

J.A. 95.

This stipulation simply shows a calculation of the drug weight attributable to Johnson for sentencing purposes and its base offense level equivalent. Reading the "plain language in its ordinary sense," we discern no agreed-upon, required, corresponding, or even identified Guidelines range in this portion of the agreement. *Tate*, 845 F.3d at 575. Nor is there any restriction in this paragraph that limits the Government from seeking an upward departure or variance on grounds unrelated to this drug weight. As discussed below, we do not construe the above provision's lack of explicit text permitting upward variances as proof the Government waived any such right.

Paragraph 4(b) in the plea agreement specifically reserved the Government's "right to make a sentence recommendation." J.A. 93. Despite representing at the Rule 11

12

colloquy that he understood the terms and language of the plea agreement, Johnson now argues this provision is vague. He relies on this court's unpublished opinion in *United States v. Peterson*, 782 F App'x 231 (4th Cir. 2019) (unpublished). This case does not help his cause. In *Peterson*, the defendant reserved the right to argue for a sentence below the agreed upon Sentencing Guidelines range and the Government agreed to recommend a "reasonable sentence." *Id*. at 232–33. At sentencing, the Government requested an upward variance based on the defendant's criminal history, which the district court granted. *Id*. at 233. This court concluded that, because of the use of the phrase "reasonable sentence," the plea agreement was ambiguous as to whether the parties agreed the Government would recommend a sentence above the Guidelines range, and ordered the defendant to be resentenced within the Guidelines range.

Like the Guidelines Stipulation, nothing in the reservation provision in paragraph 4(b) reveals a limitation on the Government's ability to make an argument about any particular sentence for Johnson. Indeed, the provision is broad, but that doesn't make it ambiguous or vague. The provision simply has no limitations, unlike the agreement to recommend a "reasonable sentence" by the Government in *Peterson*. 782 F App'x at 233.

Johnson's argument that the Government essentially waived its ability to argue for any sentence and is thus bound to make a sentencing recommendation within the Guidelines range ignores the fact that "a waiver of prosecutorial discretion by way of plea agreement must be explicit." *United States v. Snow*, 234 F.3d 187, 190 (4th Cir. 2000). The plea agreement says nothing about the Government's ability to make a motion for an upward variance and, in the absence of an explicit waiver, the Government retains the right

13

under the reservation provision to argue for such. Exercising that right was therefore not in violation of the plea agreement.

From what we can discern from the plea agreement, read as a whole, the Government likewise made no promise to only make a sentencing recommendation within the revised Guidelines range. The parties agree in paragraph 1 that the document "constitutes the full and complete record of the Plea Agreement" and "[t]here are no other agreements between the parties in addition to or different from the terms herein." J.A. 88. The relevant portion of the agreement here was the reserved right of the Government to make *a* recommendation, not the promise to make a certain kind of sentencing recommendation. Therefore, we decline Johnson's offer to bind the Government to promises it did not make. *See e.g.*, *Lewis*, 633 F.3d at 269.

2.

Other provisions also show that the plea agreement allows the Government to move for a sentence of its choosing. The express terms of the agreement reserved the Government's right "at sentencing to present any evidence and information pursuant to 18 U.S.C. § 3661, [and] to offer argument or rebuttal." J.A. 93. Section 3661 provides that at sentencing, no limitation "shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. The text of this provision shows this right was also in no way limited. And a review of the record shows the Government relied on Johnson's criminal history and his likelihood of recidivism in moving for an upward variance.

14

Johnson relies on the court's decision in *United States v. Edgell*, 914 F.3d 281 (4th Cir. 2019), to support his argument that to protect the benefit of his bargain, the Government's "reserved right to make a sentence recommendation" must be limited by the Guidelines Stipulation in paragraph 5 of the agreement. In *Edgell*, the government explicitly agreed that the defendant's total drug conduct was less than five grams of substances containing a detectable amount of methamphetamine, and it agreed to "recommend that any sentence of incarceration imposed . . . be at the lowest end of the applicable guideline range." 914 F.3d at 285 (alterations adopted). The defendant's "plea agreement did not specify the resulting sentencing range," but under the agreement, the sentencing range was 10–16 months' imprisonment. *Id*. at 285 & n.1. The Government later received lab results that showed the drugs at issue were actual methamphetamine. *Id*. at 286. As a result, the defendant's sentencing exposure increased and the PSR calculated the sentencing range to 30-37 months' imprisonment, rather than the 10-16 months as anticipated. *Id*. At sentencing, the Government successfully moved for a 30-month sentence.

The court found that the Government "affirmatively undermined the plea agreement by requesting a sentence inconsistent with its stipulation, effectively tripling [the] recommended sentence . . . anticipated under the plea agreement." *Id*. at 288. Consequently, the Government breached its plea agreement with the defendant because "[t]he government's failure at sentencing to stand by its drug conduct stipulation, and its recommendation of a sentence inconsistent with that stipulation, denied the defendant a central benefit of his bargain." *Id*. at 289.

15

This case is easily distinguishable from *Edgell*. In *Edgell*, the government explicitly agreed it would recommend a sentence at "the lowest end of the applicable guideline range." *Id.* at 285. Here, the Government did not make an explicit agreement as to what sentence it would recommend. The agreement was as to the application of a specific Guidelines factor—the provable drug weight and its base offense level equivalent of 22. As already discussed, the Government moved for a sentence above the revised Guidelines range based on Johnson's extensive criminal history and likelihood of recidivism—factors unrelated to the drug conduct from the Guidelines Stipulation. And it had a right to do so by the express terms of the agreement. So, unlike in *Edgell*, the Government here stood by its drug conduct stipulation, and as such, Johnson was not denied "a central benefit of his bargain." 914 F.3d at 289.

### III.

The Government owes Johnson "no duty but that of fidelity to the agreement." *Fentress*, 792 F.2d at 464. And the Government did what it promised to do under this plea agreement. It dismissed Count One, stood by the drug conduct stipulation, made *a* sentence recommendation, and offered evidence pursuant to 18 U.S.C. § 3661 under its reserved rights in the plea agreement. Viewing the agreement as a whole, we find nothing that constrains the right of the Government to move for a variance under Section 3553(a). The Government, therefore, was within its right to argue for a sentence above the revised Guidelines range. And in doing so, it did not breach the plea agreement with Johnson. We

hold that because the Government did not breach the plea agreement, Johnson is unable to demonstrate any plain error.  Accordingly, we affirm the amended criminal judgment.

*AFFIRMED*