**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 22-4230**

───────────

UNITED STATES OF AMERICA,

　　　　　　　Plaintiff − Appellee,

　　　v.

DEHAVEN DARNELL CRAIG,

　　　　　　　Defendant – Appellant.

───────────

Appeal from the United States District Court for the Northern District of West Virginia, at Martinsburg.  Thomas S. Kleeh, Chief District Judge.  (3:19−cr−00011−TSK−RWT−1)

───────────

Argued:  January 28, 2025　　　　　　　　　　　Decided:  June 30, 2025

───────────

Before DIAZ, Chief Judge, and QUATTLEBAUM and RUSHING, Circuit Judges.

───────────

Vacated and remanded by published opinion.  Chief Judge Diaz wrote the opinion, in which Judge Quattlebaum and Judge Rushing joined.

───────────

**ARGUED:**  Barry Philip Beck, POWER, BECK & MATZUREFF, Martinsburg, West Virginia, for Appellant.  Lara Kay Omps-Botteicher, OFFICE OF THE UNITED STATES ATTORNEY, Martinsburg, West Virginia, for Appellee.  **ON BRIEF:**  William Ihlenfeld, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

───────────

DIAZ, Chief Judge:

Dehaven Craig pleaded guilty to one count of unlawful possession of a firearm under 18 U.S.C. § 922(g)(1).  On appeal, Craig argues that the government breached the parties' plea agreement by successfully seeking two Sentencing Guidelines enhancements based on facts outside the agreement's stipulated-to relevant conduct provision.

The government counters that the plea agreement never purported to encompass the entirety of Craig's relevant conduct but merely sought to establish facts to support Craig's guilty plea.  The government further contends that its reservation of its right to provide the sentencing court with information concerning the charges in the indictment, as well as its duty of candor to the court, permitted it to seek the enhancements.

We side with Craig.  The best reading of the plea agreement is that the parties stipulated to Craig's total relevant conduct for sentencing purposes.  In federal sentencing parlance, the phrase "total relevant conduct" refers to all facts that are relevant to sentencing.  Yet nowhere in the relevant conduct stipulation are there facts to support the enhancements the government obtained.  And while the government was right to inform the probation officer and the district court of facts (not mentioned in the stipulation) that were relevant to Craig's sentencing, it overstepped by seeking enhancements based on those facts.

Because the government breached the plea agreement, we vacate Craig's sentence and remand for resentencing before a different district court judge.

I.

A.

Law enforcement agents were surveilling a motel room in Charles Town, West Virginia to arrest a woman. They saw Craig leave the room and drive off. Craig had a significant criminal history, including prior felony convictions for robbery and drug possession. Indeed, a month earlier Craig had sold heroin to a confidential informant.

After Craig left, agents entered the motel room and arrested the woman. During a protective sweep of the room, law enforcement found a .380 caliber pistol loaded with four rounds of ammunition. The woman told officers that the gun and ammunition belonged to Craig.

Law enforcement stopped Craig when he returned to the motel. Armed with a search warrant, officers found 0.8 grams of cocaine base, along with narcotics packaging, in Craig's SUV. The government indicted Craig on three counts: two drug charges under 21 U.S.C. § 841(a), and one charge for unlawfully possessing a firearm as a felon under 18 U.S.C. § 922(g)(1).

B.

The government and Craig reached a plea agreement. Craig would plead guilty to the gun charge. In exchange, the government would drop the drug charges, move for a two-level reduction for acceptance of responsibility, and recommend a sentence within the Guidelines range.

3

Paragraph nine of the agreement is at the heart of this case.  In relevant part, it reads:

> Pursuant to Sections 6B1.4 and 1B1.3 of the Guidelines, the parties hereby stipulate and agree that on April 26, 2018, in Jefferson County, in the Northern District of West Virginia, . . . Craig knowingly possessed a firearm in and affecting commerce. . . . Defendant possessed the firearm after having previously been convicted of a crime punishable by imprisonment for a term exceeding one year . . . Defendant possessed the firearm knowing he had been convicted of such a crime.

J.A. 68.

Craig also agreed to waive most of his appellate rights.  And the government reserved the right to provide the district court and probation office with relevant information regarding Craig's background and crimes, and to correct any inaccuracies in the presentence investigation report.

### C.

Two days after signing the plea agreement, the parties appeared at a plea hearing before a magistrate judge.  There, the government walked through the agreement's terms.  As to paragraph nine, the government stated that it "contains the parties' stipulation to [Craig's] *total relevant conduct*" before repeating the paragraph verbatim.  J.A. 31 (emphasis added).

The court later addressed Craig.  It asked, "Do you understand that under our concept known as relevant conduct, the Court may take into account any conduct, circumstances, and injuries relevant to the crimes to which you are pleading guilty?"  J.A. 36.  Craig said he understood.  The court then asked:

> Do you understand that under the terms of the plea agreement, you and the government have stipulated and agreed that *the total relevant conduct*

4

> *of the defendant* with regard to the superseding indictment is [as set forth in paragraph nine]?
>
> Sir, do you understand that to be *the relevant conduct stipulation* set forth in your plea agreement?

J.A. 36–37 (emphases added).

Again, Craig said he understood.

The government called an officer to testify about the facts supporting Craig's guilty plea. On cross-examination, the officer stated that there was some evidence that the gun had been stolen. The court accepted the guilty plea and ordered the probation office to prepare a presentence report.

Because Craig had prior convictions for both a crime of violence and a controlled substance offense, the probation officer calculated Craig's base offense level to be 24. The officer then applied a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 to arrive at a total offense level of 21. Because Craig's criminal history category was IV, his Guidelines range was 57–71 months' imprisonment.

The government objected and sought two enhancements. It requested (1) a two-level enhancement under U.S.S.G. § 2K2.1(b)(4)(A) because the firearm was stolen, and (2) a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) because the firearm was connected with another felony offense (possession of cocaine and intent to rob a stash house).

Craig objected to the enhancements because they weren't part of the parties' relevant conduct stipulation, but the probation officer overruled him. With the two enhancements, Craig's Guidelines range rose to 100–120 months.[1]

At sentencing, Craig's counsel renewed his objections.[2]  On Craig's reading of the plea agreement, paragraph nine constituted the total relevant conduct to which the parties stipulated.  The government thus breached the plea agreement by advocating for enhancements based on allegations outside that paragraph.

The government responded that the plea agreement didn't encompass Craig's total relevant conduct.  In its view, paragraph nine detailed facts sufficient to establish guilt but "[t]here might be other facts in dispute" that could be litigated at sentencing.  J.A. 116.

The court sided with the government, applied the enhancements, and imposed a 100-month sentence.

## II.

When a defendant, as here, preserves a challenge to the interpretation of a plea agreement, we review the challenge de novo.  *United States v. Petties*, 42 F.4th 388, 393

---

[1] Craig objected separately that his prior conviction under 21 U.S.C. § 841 wasn't a controlled substance offense, but concedes that *United States v. Groves*, 65 F.4th 166 (4th Cir. 2023) now forecloses that argument.

[2] Craig also argued, as he does on appeal, that there wasn't enough evidence to support the stolen-gun enhancement.  The government has moved to dismiss this part of the appeal, pointing to the appellate waiver provision in the plea agreement.  Because we find the government breached the agreement, we deny the government's motion as moot.

(4th Cir. 2022).  While "we employ traditional principles of contract law as a guide, we nonetheless give plea agreements greater scrutiny than we would apply to a commercial contract because a defendant's fundamental and constitutional rights are implicated." *United States v. Warner*, 820 F.3d 678, 683 (4th Cir. 2016) (cleaned up).

That scrutiny "require[s] holding the Government to a greater degree of responsibility than the defendant . . . for imprecisions or ambiguities in plea agreements." *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986).  And although Craig's plea agreement includes a waiver of appellate rights, that waiver "cannot foreclose an argument that the government breached its obligations under the plea agreement."  *United States v. Dawson*, 587 F.3d 640, 644 n.4 (4th Cir. 2009).

When we interpret plea agreements, we read their "plain language in its ordinary sense."  *United States v. Jordan*, 509 F.3d 191, 195 (4th Cir. 2007) (cleaned up).  And we try to give effect to each term included in the agreement, just as we would when we read a standard contract.  *United States v. Johnson*, 119 F.4th 343, 349 (4th Cir. 2024).

III.

A.

We begin our analysis with paragraph nine of the plea agreement.

That paragraph's prefatory clause cites "Sections 6B1.4 and 1B1.3 of the Guidelines" as the basis for what follows.  J.A. 68.  So we look to those two Guidelines sections for context.

7

Section 6B1.4, titled "Stipulations (Policy Statement)," provides that a plea agreement "may be accompanied by a written stipulation of facts relevant to sentencing." U.S.S.G. § 6B1.4(a). If a stipulation is included in a plea agreement, it "shall" "set forth the relevant facts and circumstances of the actual offense conduct and offender characteristics." *Id.* § 6B1.4(a)(1). And if the parties disagree on any "facts relevant to sentencing, the stipulation shall identify the facts that are in dispute." *Id.* § 6B1.4(b).

The commentary to U.S.S.G. § 6B1.4 provides helpful guidance. It explains, as relevant here, that "when a plea agreement includes a stipulation of fact, the stipulation must fully and accurately disclose all factors relevant to the determination of sentence." *Id.* § 6B1.4 cmt. "The stipulation should identify all areas of agreement, disagreement and uncertainty that may be relevant to the determination of sentence." *Id.*

Paragraph nine of the agreement also references U.S.S.G. § 1B1.3. That section is titled "Relevant Conduct (Factors that Determine the Guideline Range)." U.S.S.G. § 1B1.3. It generally explains how to determine a defendant's sentencing range by considering "all acts and omissions" committed by a defendant. *Id.* § 1B1.3(a)(1)(A); *see also United States v. Fitch*, 282 F.3d 364, 367 (6th Cir. 2002) (explaining that "relevant conduct, . . . , is a term with a specialized meaning under the guidelines").

Given the context in sections 6B1.4 and 1B1.3, we think the most reasonable interpretation of the prefatory clause in paragraph nine of the agreement is that the parties stipulated to all facts that were relevant to Craig's sentencing. Indeed, the Guidelines sections mentioned in that clause reference a defendant's relevant conduct for sentencing purposes, not (as the government argues) to establish guilt.

8

The government may well have *intended* paragraph nine to recite (without limitation) agreed-upon facts to support Craig's guilty plea, leaving any enhancements for another day. And if the paragraph had read "the parties agree on the following facts to support Craig's conviction," then we would have no trouble adopting the government's position. But to do so here would require us to ignore the prefatory clause that the government chose to include. We don't interpret plea agreements that way. *Johnson*, 119 F.4th at 349.

The parties' statements during the plea hearing further support our interpretation of the agreement. The government told the court that "[p]aragraph [nine] contains the parties' stipulation to [Craig's] *total relevant conduct*." J.A. 31 (emphasis added). And when the court asked Craig whether he understood that the parties had "stipulated and agreed [to the facts in paragraph nine] to be the *relevant conduct stipulation* set forth in your plea agreement," Craig answered yes. J.A. 36–37 (emphasis added). Tellingly, the government never objected to the court's characterization of the agreement.

Considering the plea agreement's text, the plea colloquy, and the heightened scrutiny we afford plea agreements, we find that paragraph nine contained the "total relevant conduct" to which the parties stipulated. The government thus breached the agreement when it sought enhancements based on facts not contained in paragraph nine.

## B.

The government next argues that a separate provision of the plea agreement (paragraph eleven) and the government's independent duty of candor to the district court required it to seek the enhancements. We disagree.

9

To be sure, paragraph eleven reserves the government's right to correct any inaccuracies or inadequacies in the presentence report to "enable the Court to exercise its sentencing discretion." J.A. 69. And the government, like any party, has a duty of candor to the court. Yet that duty, at least here, can't excuse commitments the government made in the plea agreement.

We harmonized these competing obligations in *United States v. Edgell*, 914 F.3d 281 (4th Cir. 2019). There, the parties stipulated that the defendant's "total drug conduct" involved "less than five (5) grams of substances containing a detectable amount of methamphetamine." *Id.* at 285. The plea agreement, just like the one here, "also reserved the government's right to provide to the Court and the United States Probation office relevant information including defendant's background, criminal record, offense charged in the indictment and other pertinent data" to aid in sentencing. *Id.* at 285–86 (cleaned up).

Lab testing later revealed that the drugs were actual methamphetamine. *Id.* at 286. The government informed the probation office, which adopted the lab findings, and then calculated a higher sentencing range than the stipulation would have allowed. "At sentencing, the government [successfully] advocated for a sentence consistent with that elevated range[.]" *Id.* at 285.

We concluded that "[t]he government's failure at sentencing to stand by its drug conduct stipulation" required vacatur. *Id.* at 289. Recognizing that "the government must carefully balance its duty of candor to the sentencing court with the sometimes competing—but equally solemn—duty to honor its commitments under a plea agreement," we held "this balance is achieved where the government makes the necessary disclosures

10

to the sentencing court, but nevertheless continues to advocate for acceptance of the agreement." *Id.* at 288 (cleaned up).

So too here. The government didn't breach the plea agreement when it told the probation officer and the district court it believed that the gun was stolen and connected to another felony. That's consistent with its duty of candor.

But the government crossed the line when it advocated for two enhancements based on those allegations—which fell beyond the total relevant conduct stipulation—and thus deprived Craig of the benefit of his bargain. "Although the Government has a duty to provide the sentencing court with relevant factual information and to correct misstatements, it may not hide behind this duty to advocate a position that contradicts its promises in a plea agreement." *United States v. Munoz*, 408 F.3d 222, 227 (5th Cir. 2005).

C.

Craig seeks specific performance of the plea agreement. In this circumstance we're required to remand for resentencing before a different district court judge. *Warner*, 820 F.3d at 685.

"We emphasize that our decision is in no way a reflection on the trial judge." *United States v. Peglera*, 33 F.3d 412, 415 (4th Cir. 1994). Nor do we ascribe bad faith to the government. But the bottom line is that Craig was deprived of the benefit of his bargain. Our decision makes him whole.

*VACATED AND REMANDED*

11