PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-4252

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

BRANDON TATE,

Defendant – Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert J. Conrad, Jr., District Judge. (3:13-cr-00296-RJC-1)

Argued: October 28, 2016            Decided: January 11, 2017

Before GREGORY, Chief Judge, and KEENAN and FLOYD, Circuit Judges.

Affirmed by published opinion. Judge Floyd wrote the opinion, in which Chief Judge Gregory and Judge Keenan joined.

**ARGUED**: Roderick Morris Wright, Jr., WRIGHT LAW FIRM OF CHARLOTTE, PLLC, Charlotte, North Carolina, for Appellant. Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF**: Jill Westmoreland Rose, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

FLOYD, Circuit Judge:

Appellant Brandon Tate signed a plea agreement in which the government agreed to seek a sentence at the lowest end of the "applicable guideline range." At sentencing, the government recommended a sentence at the lowest end of the guideline range found by the district court. Tate now argues that in doing so, the government breached the plea agreement. Tate contends that the government was actually obligated to recommend a sentence at the lowest end of the correct guideline range, which, in his view, was lower than the range found by the court. We disagree, and hold that in this case, the phrase "applicable guideline range" only obligated the government to recommend a sentence at the lowest end of the guideline range found by the district court. Because the government fulfilled this obligation, it did not breach the plea agreement. Accordingly, we affirm.

I.

In a written plea agreement, Tate agreed to plead guilty to possession with intent to distribute and distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (2012). The plea agreement stated that the government would "seek a sentence at the lowest end of and either party may seek a departure or variance from the 'applicable guideline range.' (U.S.S.G. § 5C1.1)." J.A. 74. Additionally, Tate agreed to

2

waive all "rights to contest the conviction except for: (1) claims of ineffective assistance of counsel or (2) prosecutorial misconduct." J.A. 77. Tate also agreed to waive "all rights conferred by 18 U.S.C. § 3742 or otherwise to appeal whatever sentence is imposed with the two exceptions set forth above." Id.

A magistrate judge then held a hearing pursuant to Federal Rule of Criminal Procedure 11. At the hearing, Tate consented to plead guilty, and the magistrate judge established Tate's competence to plead guilty and his understanding of the terms of his plea agreement.

A presentence report (PSR) and, later, a revised PSR were then prepared. The revised PSR calculated a base offense level of 24 under the Sentencing Guidelines. Tate then received a three-level reduction for acceptance of responsibility, which resulted in a total offense level of 21. The revised PSR then assigned Tate seven criminal history points and calculated his criminal history as Category IV. This criminal history category and the total offense level of 21 resulted in a guideline range of 57 to 71 months' imprisonment.

Tate objected to the revised PSR's assignment of three criminal history points for his four 2004 North Carolina state convictions for common law robbery, robbery with a dangerous weapon, and attempted robbery with a dangerous weapon. Tate

3

claimed that those convictions should not have been the basis for additional points under the Guidelines because they were part of a consolidated sentence. He argued that his guideline range should have actually been 46 to 57 months' imprisonment.

At sentencing in March 2015, the district court adopted the magistrate judge's finding that Tate's guilty plea was knowingly and voluntarily made, and found there was a factual basis to support the entry of the plea. The district court overruled Tate's objections to the revised PSR's assignment of criminal history points, and adopted the revised PSR's calculation of the guideline range of 57 to 71 months' imprisonment. The government then recommended a sentence of 57 months, and stated that it was doing so in compliance with the plea agreement. The government also stated that Tate had been making good use of his time in prison, and that this boded well for his future. The district court then sentenced Tate to 57 months' imprisonment.

Tate noted a timely appeal of his sentence, claiming that the government's sentencing recommendation breached the plea agreement. The government then moved to dismiss the appeal, arguing that the appeal waiver in Tate's plea agreement bars Tate's claim.

4

II.

The first issue, raised in the government's motion to dismiss, is whether Tate's appeal waiver bars this claim.  In the appeal waiver, Tate waived all rights to appeal his conviction and his sentence, except for claims of ineffective assistance of counsel and prosecutorial misconduct.

Tate's appeal waiver is generally valid.[1]  However, "[a] defendant's waiver of appellate rights cannot foreclose an argument that the government breached its obligations under the plea agreement."  United States v. Dawson, 587 F.3d 640, 644 n.4 (4th Cir. 2006) (citing United States v. Cohen, 459 F.3d 490, 495 (4th Cir. 2006)).  Here, Tate argues that the government breached the plea agreement.  This Court may review that claim; it is not barred by the appeal waiver.

---

[1] A criminal defendant may waive the right to appeal if that waiver is knowing and voluntary.  United States v. Davis, 689 F.3d 349, 354 (4th Cir. 2012) (per curiam).  "Generally, if a district court questions a defendant regarding the waiver of appellate rights during the Rule 11 colloquy and the record indicates that the defendant understood the full significance of the waiver, the waiver is valid."  United States v. Thornsbury, 670 F.3d 532, 537 (4th Cir. 2012).  Here, Tate confirmed at his Rule 11 hearing that he agreed with the appeal waiver and understood that he was waiving his right to appeal his conviction and sentence.  His waiver is therefore valid.

We now turn to the main issue in this case: whether or not the government breached the plea agreement. In the plea agreement, the government agreed to seek a sentence at the lowest end of the "applicable guideline range." The government contends that this provision obligated it to recommend a sentence at the lowest end of the guideline range found by the district court. Tate argues that the government was not permitted to rely on the range found by the district court, but was instead obligated to recommend an even lower sentence, based on what he alleges is the correct guideline range.

Because Tate did not raise this issue below, we review his claim for plain error. Fed. R. Crim. P. 52(b); Puckett v. United States, 556 U.S. 129, 135 (2009). Plain error analysis has four prongs: (1) there must be an error; (2) the error must be plain; (3) the appellant's "substantial rights" must be affected by the error; and (4) the error must seriously affect "the fairness, integrity or public reputation of judicial proceedings." Puckett, 556 U.S. at 135 (internal quotation mark omitted). To prevail, Tate would need to prove all four prongs; however, Tate's appeal fails on the first prong, error.

Tate alleges that the government breached the plea agreement. Plea agreements are grounded in contract law, and both parties to a plea agreement should receive the benefit of

6

their bargain.  Dawson, 587 F.3d at 645.  The government breaches a plea agreement when a promise it made to induce the plea goes unfulfilled.  Santobello v. New York, 404 U.S. 257, 262 (1971).  However, "[a] central tenet of contract law is that no party is obligated to provide more than is specified in the agreement itself.  Accordingly, in enforcing plea agreements, the government is held only to those promises that it actually made to the defendant."  United States v. Peglera, 33 F.3d 412, 413 (4th Cir. 1994).

In determining what promises the government made, we read "a plea agreement's plain language in its ordinary sense." United States v. Jordan, 509 F.3d 191, 195 (4th Cir. 2007) (internal quotation marks omitted).  Moreover, any ambiguities in a plea agreement are construed against the government as its drafter.  United States v. Barefoot, 754 F.3d 226, 246 (4th Cir. 2014).  Whether a plea agreement is ambiguous on its face is a question of law to be resolved by the courts, Jordan, 509 F.3d at 195, and we will not create an ambiguity where none legitimately exists.

In determining whether the government breached the plea agreement in this case, we will assume arguendo that the lower guideline range proposed by Tate of 46 to 57 months was the correct guideline range, and that the range found by the district court was incorrect.  Notably, Tate has waived his

7

right to appeal the court's guideline range determination. The only question here is what the <u>government</u> was required to do under the plea agreement. The plea agreement stated that the government would seek a sentence at the lowest end of the "applicable guideline range." We hold that the "applicable guideline range" means the guideline range found by the district court, and that, therefore, the government's sentencing recommendation complied with the plea agreement.[2]

A.

First, the natural reading of the phrase "applicable guideline range" is the guideline range found by the district court, because it is clearly the district court that is assigned the task of determining the "applicable guideline range." The Supreme Court has consistently held that sentencing in federal district courts is to proceed as follows: First, the district court must determine "the applicable [g]uidelines range." <u>Molina-Martinez v. United States</u>, 136 S. Ct. 1338, 1342 (2016); see also <u>Peugh v. United States</u>, 133 S. Ct. 2072, 2080 (2013);

---

[2] This holding should not be read to preclude claims of bad faith or prosecutorial misconduct. No such claims have been made in this case.

8

<u>Gall v. United States</u>, 552 U.S. 38, 49 (2007).[3] Next, once the district court determines this range, the government and the defendant present their arguments regarding what the sentence should be. <u>Peugh</u>, 133 S. Ct. at 2080. The court considers these arguments, along with the factors set forth in 18 U.S.C. § 3553(a). <u>Id.</u> Then, the court determines the defendant's sentence, and states its reasons for this sentence on the record. <u>Id.</u>

In the process described above, it is plainly the task of the district court to determine the "applicable guideline range," and it is this range that forms the basis of the rest of the sentencing hearing. See <u>Gall</u>, 552 U.S. at 49 ("[T]he Guidelines should be the starting point and the initial benchmark.") Thus, in the context of a federal sentencing proceeding, where the district court first determines the "applicable guideline range" and the government then has an opportunity to make a sentencing recommendation, it is clear that a promise by the government to recommend a sentence at the lowest end of the "applicable guideline range" is a promise to

---

[3] In all three cited cases, the Court has used the specific phrase "applicable [g]uidelines range" to describe the range determined by the district court. <u>Molina-Martinez</u>, 136 S. Ct. at 1342; <u>Peugh</u>, 133 S. Ct. at 2080; <u>Gall</u>, 552 U.S. at 49.

9

recommend a sentence at the lowest end of the range found by the court.

Additionally, the Guidelines themselves state "[t]he court shall determine the kinds of sentence and the guideline range as set forth in the guidelines," and instruct that the court does so in accordance with U.S.S.G. 1B1.2, which is entitled "Applicable Guidelines." U.S.S.G. 1B1.1(a)(1). The Guidelines as a whole are written as instructions to the court on how to determine the applicable guideline range. It is clear that it is the district court, and no other entity, that traditionally determines the "applicable guideline range."

Based on the above, we hold that the phrase "applicable guideline range," as used in the plea agreement here, unambiguously refers to the guideline range found by the district court.

B.

Second, although this Court has not dealt with this exact issue before, it has previously considered similar arguments made by criminal defendants claiming that the imposition of incorrect sentences rendered their appeal waivers invalid. See United States v. Brown, 232 F.3d 399, 404 (4th Cir. 2000); United States v. Bowden, 975 F.2d 1080, 1081 n.1 (4th Cir.

10

1992). These cases support the above interpretation of "applicable guideline range."

In Bowden, this Court was presented with an appeal waiver that read, "By this agreement Defendant waives any appeal and the right to exercise any post-conviction rights . . . if the sentence imposed herein is within the [Sentencing Guidelines.]" 975 F.2d at 1081 n.1 (emphasis added). In that case, we held that the waiver preserved the defendant's right to challenge his sentence as being outside of the Guidelines, because the waiver was expressly conditioned on the sentence being within the Guidelines. Id.

In contrast, in Brown, the defendant had signed a plea agreement with a waiver of all rights to appeal his sentence; however, a different part of the plea agreement stated that "[t]he Defendant understands . . . [t]hat sentencing will be in accordance with the United States Sentencing Guidelines." 232 F.3d at 404 (alterations in original). There, this Court held that the defendant had waived all rights to contest his sentence, and that the other statement that his sentence would be "in accordance with" the Guidelines did not qualify or change this unconditional waiver. Id. We explained:

> A common sense reading of [the relevant provision] indicates that its purpose is merely to inform Brown that his sentence will be calculated using the Sentencing Guidelines. The paragraph does not, in any way, condition the waiver of Brown's right to appeal

11

> on a proper application of the Guidelines, as the plea in <u>Bowden</u> did.

<u>Id.</u>

Although <u>Bowden</u> and <u>Brown</u> address the validity of appeal waivers, rather than the government-breach argument presented here, they are still instructive. Read together, these cases indicate that a provision in a plea agreement that is explicitly conditioned on a correct sentence under the Guidelines will be honored, but a mere reference to the Guidelines is not sufficient to create such a condition. The provision at issue here falls into the latter category. Moreover, <u>Brown</u> counsels that common sense should be used when interpreting such provisions. Here, when the process and structure of sentencing are taken into account, common sense dictates that "applicable guideline range" signifies the range found by the district court.

## C.

Third and finally, Tate's proposed interpretation of the plea agreement is logically untenable. Tate contends that the term "applicable guideline range" should be read to mean the <u>correct</u> guideline range--which in this case we assume to be 46 to 57 months. Tate is thus arguing that the only way the government could have complied with the plea agreement would

12

have been through a recommendation of a 46 month sentence. Under Tate's view, any other recommendation violates the plea agreement. However, although it was entirely possible for Tate's attorney to calculate the guideline range and propose that the specific figure of 46 months be included in the agreement when it was made, the agreement does not say 46 months. No specific number of months is included. Rather, the agreement uses only the indeterminate phrase, "the lowest end of . . . the 'applicable guideline range.'"

The fact that the two parties did not specify a number of months in the agreement, even though it was completely possible for them to do so, and instead merely agreed to the lowest end of a yet-to-be-determined "range," manifestly implies that they anticipated that a third party (i.e., the district court) was going to determine that range. If the two parties had actually agreed to 46 months, there is no conceivable reason why they would forego memorializing this agreement, and instead opt for the indeterminate "the lowest end of . . . the 'applicable guideline range'" language contained in the plea agreement. It is well established that the government is not "obligated to provide more than is specified in the agreement itself." Peglera, 33 F.3d at 413. Tate's interpretation of the plea agreement would violate this rule.

13

IV.

At bottom, Tate's true grievance is with the district court's application of the Guidelines in determining the guideline range. However, Tate has waived the right to present this issue on appeal. He cannot now convert this claim of sentencing error into a claim of breach by the government when the government has complied fully with the terms of the plea agreement.

As used in the plea agreement here, the phrase "applicable guideline range" unambiguously means the guideline range determined by the district court. The government complied with the plea agreement when it made its sentencing recommendation based on the district court's guideline range calculation. Therefore, an error did not occur, and the plain error standard has not been met. Accordingly, the judgment below is

AFFIRMED.

14